EXHIBIT 1

EXHIBIT 1

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| _____ ) | |
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:14-CV01649-RFB-GWF |
| ) | |
| ) | |
| HEALTH FORMULAS, LLC, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

# DECLARATION OF VICTOR LIPNITSKY, CPA, CFE, CIRA

**December 5, 2014**

## I.  DECLARATION

1.  I, Victor Lipnitsky, declare pursuant to 28 U.S.C. § 1746 as follows:

2.  This declaration is submitted in support of the Defendants' Supplemental Opposition to the FTC's *Ex Parte* Motion for a TRO with Asset Freeze, Appointment of a Receiver, and Other Equitable Relief and Response to Order to Show Cause Why a Preliminary Injunction Should Not Issue.

3.  Unless specifically stated, I have personal knowledge of the matters set forth below and the opinions expressed represent my professional opinion.  If called to testify, I could and would testify competently to the facts and opinions discussed in this declaration.

4.  I was assisted by a team of six professionals who worked under my supervision and direction.  I estimate the hours spent on this analysis by myself and my team to be approximately 300 hours.

## II.  ASSIGNMENT

5.  I have been asked by counsel for the Defendants in the above-referenced case to conduct a forensic analysis of various assets in which Defendants Jason and Danelle Miller maintain an ownership interest – specifically, certain products (and their associated accounts) that have not been named (or otherwise alleged to be fraudulent) in the Complaint filed by the FTC against Defendants on October 7, 2014, but whose assets have nevertheless been frozen and maintained as part of the Temporary Receivership.  I refer to these products throughout my declaration as "Unnamed/Unrelated Products." Specifically, I have been asked to review corporate general ledgers and related financial data for Peak Nitric Oxide, one of the "Unnamed/Unrelated Products" and to summarize transfers of funds from customer acquisition of these "Unnamed/Unrelated Products" to

associated merchant, processing, and marketing accounts.

6. I have also been asked to review Exhibits 20 (Declaration of John Aiken) and 21 (Declaration of Emil George) to the FTC's Motion for Temporary Order, along with the Report of the Temporary Receiver's Activities from October 14, 2014 through November 11, 2014, and, specifically, the various company "transfers" identified in each.

## III. PROFESSIONAL BACKGROUND AND QUALIFICATIONS

7. As detailed in my curriculum vitae, a true and correct copy of which is attached to this declaration as **Attachment A**, I hold a Bachelor's of Arts degree in Economics from the State University of New York (SUNY) at Stony Brook, and I am a Certified Public Accountant licensed in the State of Maryland, a Certified Fraud Examiner, and a Certified Insolvency and Restructuring Analyst.

8. I am currently a Director in the Dispute Advisory and Forensic Services Group for Stout Risius Ross, Inc. ("SRR"), a premier global financial advisory firm that specializes in investment banking, valuation and financial opinions, and dispute advisory and forensic services. I have held this position since February 2014.

9. Prior to joining SRR, I served as a Director for Invotex Group, a regional business advisory firm that was recognized as the largest turnaround management consulting firm in Baltimore and ranked 7th among top credit advisors in the nation (among non-investment banks).

10. I have worked with clients including Fannie Mae, Ernst & Young, Lincoln National Life Insurance Company, US Food, Capital Funding Group, the U.S. Department of Justice, the Federal Trade Commission, and multiple states Attorney General offices across a broad range of industries including, but not limited to, real estate, healthcare, banking and finance, tobacco, insurance, nonprofit construction, and professional services.

11. I have provided expert witness and summary witness testimony on matters involving forensic accounting, bankruptcy and compliance in arbitration and federal court proceedings.  I was previously admitted as an expert in the United States Bankruptcy Court for the District of Maryland and I have also testified on behalf of the Maryland Office of the Attorney General.  A list of my testimonial experience is detailed in **Attachment A**.

12. While serving as a Director at Invotex, my firm was appointed as a Receiver for POS Dream Homes after the Maryland Attorney General's Office petitioned for a freeze of all assets in what turned out to be a Ponzi scheme in which POS Dream Homes took in over $125 million of investor funds in less than a two-year timeframe.  My firm, working with federal criminal authorities, traced assets throughout a 10-state operation and reconstructed accounting records that were purposefully obscure.  Our duties further included gathering and administering all of the assets and, ultimately, distributing available funds to ongoing claimants.

13. Further, while serving as a Director at Invotex, my firm was appointed as a Receiver for a real estate investment trust (Liberty Trade International), which allegedly engaged in a scheme to defraud investors, by the Securities Commissioner for the State of Maryland.  Our responsibilities included identifying and safeguarding assets, converting assets to cash, identifying claimants, determining claims, and ultimately distributing available funds to claimants.

14. In addition, while serving as a Director at Invotex, my firm, at the request of the Federal Trade Commission, was appointed Examiner of a credit counseling and debt consolidation agency (Ameridebt) in bankruptcy.  In our role as Examiner, we were required to investigate and analyze the financial records of the debtor and report our

DECLARATION OF
VICTOR LIPNITSKY

findings, which included evidence of fraudulent transfer payments to related entities that first manifested as fluctuations in profitability.  As a result of our report, the bankruptcy court appointed a trustee to recover assets for the benefit of the estate's creditors, primarily 300,000 customers allegedly deceived by the debtor.

15. My business address is 100 International Drive, 23rd floor, Baltimore, MD 21202.

## IV. DATA AND OTHER INFORMATION CONSIDERED

16. In arriving at the conclusions outlined, I have based my opinions on my expertise in accounting and fraud investigations, summarizing and presenting financial and accounting data, my background as a financial advisor to bankruptcy trustees and court appointed receivers, and my review of various documents and pleadings produced to date in this matter.  The documents and information I considered in forming the opinions expressed in this report are identified in **Attachment B.** Additionally, I had discussions with Jason and Danelle Miller.

17. I have considered and evaluated the reliability of the underlying data and the degree to which my assumptions are supported by the record in this matter.  The techniques I used to trace proceeds are generally accepted within the accounting and fraud investigation professions[1] and are sufficiently explained and disclosed to permit a review of my work.

18. With respect to my anticipated testimony in this case, I may use as exhibits certain documents produced, which I have reviewed or relied upon in this report.  I also may create demonstrative exhibits to assist me.

## V. POSSIBLE REVISIONS TO THIS REPORT

19. The opinions expressed herein are based on the information made available to me as of the date of this report. I reserve the right to review any information produced by any

---

[1] AICPA Practice Aid 07-01: Forensic Accounting – Fraud Investigations.

parties subsequent to the date of this report and update this report as necessary to reflect any additional analysis and conclusions.

20. My review of financial records is ongoing. Should I discover any documentation that will materially alter the contents of this declaration, I will update it accordingly.

## VI. SUMMARY OF CONCLUSIONS AND OPINIONS

21. Based on my review and analysis of the data outlined in Section IV of this declaration and detailed in **Attachment B**, I have reached the following conclusions and opinions specifically as to Peak Nitric Oxide (one of the "Unnamed/Unrelated Products").  I also believe that other "Unnamed/Unrelated Products" may share commonalities with Peak Nitric Oxide.  The "Unnamed/Unrelated Products" and their associated corporate entities are identified in **Attachment C**.

### Peak Nitric Oxide

22. Peak Nitric Oxide had its own separate merchant, processing, and marketing accounts.

23. Proceeds of sales from purchasing customers of Peak Nitric Oxide flowed into separate processing account(s).

24. Peak Nitric Oxide was the main product sold by Wellness Labs, LLC.

25. Proceeds of sales of Peak Nitric Oxide can be traced separately from the sales of different, unrelated products.

26. In the flow from customer sales to final fund distributions, there are specific distinguishable accounts associated with Peak Nitric Oxide that contain funds that are not associated with the proceeds of sales of the named Defendants.

27. These specific, distinguishable accounts (which have been seized as part of the broad asset freeze and are held within the Temporary Receivership) are identified in **Attachment F**.

28. Proceeds of sales for Peak Nitric Oxide can be clearly traced through its merchant, processing, and marketing accounts. These accounts can be distinguished and have been maintained separately from the other accounts that have been seized. The balance of these accounts is approximately $875,000. (See **Attachment F**)

**"Unnamed/Unrelated Products"**

29. The other "Unnamed/Unrelated Products" appear to have characteristics in common with Peak Nitric Oxide, such as:

- **unique merchant accounts;**

- **the automatic flow of sales proceeds from unique merchant account(s) into unique processing accounts; and,**

- **sales proceeds flowing from the unique processing account(s) into the operating account of the company that sells the "Unnamed/Unrelated Product."**

## VII. BACKGROUND

30. On October 7, 2014, the FTC filed a Complaint against eight named corporate Defendants in which the Miller Defendants have an ownership interest, including: Health Formulas, LLC; Pure Vitamins, LLC; Longhorn Marketing, LLC; Method Direct, LLC; Weight Loss Dojo, LLC; VIP Savings, LLC; DJD Distribution, LLC; and MDCC, LLC.

31. The FTC's Complaint was limited to eight identified dietary supplement products (the "Named Products") or brand names (at least one of which was not associated with a Named Corporate Defendant). In addition to these products, the Miller Defendants maintain ownership interests in other products that have not otherwise been identified in the Complaint and as to which there are no specific allegations of fraud. These products are identified in **Attachment C**, and include Peak Nitric Oxide. The accounts associated

VICTOR LIPNITSKY                                    6

with these "Unnamed/Unrelated Products" have been seized and are currently being maintained by the Temporary Receiver.

32. During a November 17, 2014 Preliminary Injunction hearing, the Court referenced so-called "inter-company transfers" noted in the November 12, 2014 Temporary Receiver's Report of Activities from October 14, 2014 through November 14, 2014.[2]

**Temporary Receiver's Report**

33. The Temporary Receiver's Report identified all of the transactions between the "Receivership entities" as inter-company transactions.

34. With respect to those "inter-company transfers, the Temporary Receiver noted, among other things, the following:

    a.  its "review and analysis of accounting records and financial activities reveals frequent and voluminous inter-company transactions between the Receivership Entities." See Receiver's Report at p. 10 of 19;

    b.  "other than sales, most of the other operating income was inter-company transactions to allocate funds between the Receivership Entities, which were recorded as income and expenses," *see id.* at p. 11 of 19;

    c.  "Sales Entities are entities created to sell products. Each Sales Entity sells a different product. Merchant Entities are entities that receive payments on behalf of the Sales Entities. Each payment comes into a Merchant Entity with an indication of which Sales Entity it is for. The payment is then transferred from the Merchant Entity to the appropriate Sales Entity." *See id.* at p. 12 of 19; and

    d.  "These inter-company transactions mostly result when one of the credit card

---

[2] Defendant's counsel informed me of the courts comments given their participation in the November 17, 2014 hearing.

processing entities (Merchant Entities) receives funds on behalf of one of the marketing/sales entities (Sales Entities) and then transfers the funds to the proper marketing/sales entity as previously explained.  These transactions were recorded to the proper marketing/sales entity as previously explained.  These transactions were recorded as sales/income for the Merchant Entities and were recorded as third party payouts/trust account payouts." *See id.* at p. 12 of 19.

35. The Receiver also referred to all disbursements made to DJD Distribution and MDCC as inter-company transactions.[3]

**Declaration of John Aiken**

36. I reviewed the Declaration of John Aiken dated September 30, 2014.  Mr. Aiken provided a summary of deposits and disbursements by entity. He characterized all transactions between the defendants in this case as "internal transfers."

37. Mr. Aiken totaled all of the cash deposits and withdrawals using the bank accounts of the named defendants. He determined the bank accounts received credits (money coming into the accounts) of $99,909,908.62 and the bank accounts paid out $99,926,115.41.[4]

38. Mr. Aiken summarizes the number of merchant accounts and the corresponding transaction amounts at various acquiring banks and refers to the number of billing descriptors associated with these accounts.[5]

39. Mr. Aiken identifies transactions totaling $70,352,062.74 as internal transfers.[6] In Attachment E of his declaration Mr. Aiken provides a summarized list of the transactions

---

[3] Report of Temporary Receiver's Activities October 14, 2014 Through November 11, 2014, p. 14.

[4] Declaration of John Aiken, par. 30.

[5] Declaration of John Aiken, par. 37-40 and Table 3.

[6] Declaration of John Aiken, par. 32.

between the defendants that sum to $70,352,062.74.

**Declaration of Emil George**

40. I reviewed the Declaration of Emil George, FTC's forensic accountant, attached as Exhibit 21 in support of the FTC's Motion for TRO.  Mr. George's declaration is limited to discussing money transfers from corporate entities, such as Wellness Labs, LLC, to CSC Client and General Accounts. Mr. George reviewed receipts and disbursements of two of CSC's corporate accounts at Comerica Bank.

41. Mr. George quantifies in summary what he refers to as "transfers" from Wellness Labs to CSC.  Mr. George stated approximately $334,000 and $14,000 was transferred from Wellness Labs to CSC accounts 5265 and 7396, respectively.[7]

## VIII. COMMENTS ABOUT TEMPORARY RECEIVER'S REPORT AND THE DECLARATIONS OF JOHN AIKEN AND EMIL GEORGE

42. Counsel asked me to review the Temporary Receiver's Report, the Declaration of John Aiken and the Declaration of Emil George (the "Reports"). The analysis in all three Reports was conducted at an entity/company-level. An entity/company-level analysis combines multiple accounts without differentiating between the sources of funds flowing into those accounts, and specifically, fails to differentiate proceeds by product. Performing an analysis only at the entity/company-level does not allow for differentiation between product proceeds that are held in the various accounts that are subject to the TRO's asset freeze.

43. Specific identification of which accounts contain proceeds from sales of Named or "Unnamed/Unrelated Products" requires extensive analysis of the flow of proceeds, by product, from the merchant accounts to the processing accounts and from the processing

---

[7] Declaration of Emil George, September 26, 2014, p. 4.

accounts to the operating accounts.

44. In my opinion, the analysis performed by the Receiver, Mr. Aiken and Mr. George failed to demonstrate that the funds in each account were combined with proceeds from the sales of other Named and "Unnamed/Unrelated Products." Based on my analysis of Wellness Labs, LLC, at the product account level, the proceeds from the sale of Peak Nitric Oxide were not combined with the proceeds of any other Named or "Unnamed/Unrelated Product" sales for other companies.

**Temporary Receiver's Report**

45. The Temporary Receiver's Report was limited to a review and analysis of transactions on an entity/company-level.   The Temporary Receiver's Report did not analyze sales transactions from a product/account level – meaning, that the Temporary Receiver did not analyze the flow of sales proceeds on a product-by-product basis to associated merchant, processing, and marketing accounts to determine whether the accounts holding those funds were separate and distinguishable from accounts relating to other products.

46. The Temporary Receiver identified all of the transactions between the "Receivership entities" as inter-company transactions regardless of the business purpose for the transaction. He acknowledges that he did not specifically analyze the transactions on an account-by-account basis and, therefore, as stated in his report on page 10, the Combined Financial Statements of the Receivership Entities are over-stated.

47. The Receiver also referred to all disbursements made to DJD Distribution and MDCC as inter-company transactions.[8]

48. Based on my review of the transactions, the disbursements made from Wellness Labs to

---

[8] Report of Temporary Receiver's Activities October 14, 2014 Through November 11, 2014, p. 14.

DJD Distribution were to pay for the product fulfillment services that DJD Distribution provided to Wellness Labs. If DJD Distribution did not provide these services to Wellness Labs, Wellness Labs would have had to pay another vendor to provide these services. Product fulfillment costs were a business cost incurred by Wellness Labs. The payments made by Wellness Labs for these services were not "inter-company transfers." They were disbursements like disbursements paid to any other vendor.

49. Similarly, the disbursements Wellness Labs paid to MDCC were for shipping costs and customer service support.  If MDCC did not provide these services to Wellness Labs Wellness Labs would have had to pay another vendor to provide these services. Wellness Labs needed to have customer service support and the ability to ship their product, Peak Nitric Oxide. The payments made by Wellness Labs for these services were not "inter-company transfers." They were disbursements like disbursements paid to any other vendor.

50. In my opinion, the disbursements made by Wellness Labs to DJD Distribution and MDCC were not inter-company transaction but rather disbursements made in the normal course of business.

51. In my opinion, the disbursements made by the other "Unnamed/Unrelated Product" Companies to DJD Distribution and MDCC also appear to be disbursements made in the normal course.

### Declaration of John Aiken

52. I reviewed the Declaration of John Aiken dated September 30, 2014.  Mr. Aiken provided a summary of deposits and disbursements for the Named Corporate Entities.  He categorized all transactions between the defendants in this case as "internal transfers" without providing any context or business purposes of such deposits and disbursements.

53. For example, he identifies that approximately $70 million[9] was transferred between certain business accounts, however, he fails to explain what these transfers relate to or if these transfers relate to Named or "Unnamed/Unrelated Products."

54. The transactions Mr. Aiken refers to as "internal transfers" (as listed in Attachment E of his declaration) are not transfers. The amounts reflected represent, by processing company, the proceeds from sales for each marketing company identified. The purpose of the processing company is to receive sales proceeds from the merchant accounts. If the marketing companies identified didn't use the service provided by the related processing companies they would have to find unrelated processing companies to provide the same service.

55. Mr. Aiken summarizes the number of merchant accounts and the corresponding transaction amounts at various banks and refers to the number of billing descriptors associated with those accounts.[10] However, Mr. Aiken fails to specifically identify the product associated with each account. As a result, Mr. Aiken failed to identify the specific amounts for Named and "Unnamed/Unrelated Products."

### Declaration of Emil George

56. I reviewed the Declaration of Emil George, FTC's forensic accountant, attached as Exhibit 21 in support of the FTC's Motion for TRO. Mr. George's declaration is limited to discussing money transfers from corporate entities, such as Wellness Labs, LLC, to CSC Client and General Accounts. Mr. George reviewed receipts and disbursements of two of CSC's corporate accounts at Comerica Bank.

57. Mr. George quantifies in summary what he refers to as "transfers" from Wellness Labs to

---

[9] Declaration of John Aiken, par. 32.

[10] Declaration of John Aiken, par. 37-40 and Table 3.

CSC. Mr. George stated approximately $334,000 and $14,000 was transferred from Wellness Labs to CSC accounts 5265 and 7396, respectively.[11]  Mr. George did not provide any explanation for these transactions.  Furthermore, he did not compare any of these transfers to the company general ledgers to determine their purpose.

58. I reviewed the transactions in the general ledger for Wellness Labs to understand the purpose of these transactions. None of the transactions were "transfers."  The general ledger shows that these transactions were made for the purpose of paying company expenses.  The $14,000 "transfer" to the 7396 account was a distribution from Wellness Labs to one of its investors, Silver Valley Investments, that was paid from the CSC account on behalf of Wellness Labs. The $334,000 "transfer" represents funds disbursed to pay vendors, which included approximately $14,000 paid to CSC for the business management services they provide to Wellness Labs (i.e., disbursing payments to vendors).

59. Additionally, it is important to note that there was a valid business purpose for CSC paying Wellness Labs' vendors out of the CSC trust account.  The CSC trust account was set-up to allow vendors to be paid via wire transfer.  The trust account had to first be funded before the vendor payments could be made.  This structure explains why Wellness Labs "transferred" funds to CSC.

60. In my opinion, Mr. George has incorrectly classified these disbursements as transfers. These disbursements pay Wellness Labs business expenses.

61. In my opinion, the disbursements made by the other "Unnamed/Unrelated Product" Companies to CSC also appear to be payments to vendors and investors for business expenses.

---

[11] Declaration of Emil George, September 26, 2014, p. 4.

## IX.  ANALYSIS

62. I performed my analysis at a product account level basis for Peak Nitric Oxide and its associated sales and marketing company, Wellness Labs, LLC.

### Understanding of the Flow of Funds

63. Fund flow analysis requires an understanding of the operations and cash flow of the companies being analyzed. To gain an understanding of the operations of the companies that sell the "Unnamed/Unrelated Products" I spoke to the owners of the company to ascertain a list of accounts, the business purpose of each account and how the accounts interacted.

64. My understanding of the sales process and accounting for the "Unnamed/Unrelated Products" is as follows:

   a. Each product has a unique merchant account or accounts with a merchant bank that receives proceeds from credit card sales at the time of purchase. The number of merchant accounts established for each product is determined by the volume of sales for that product. All the funds from product sales flow directly into the designated merchant bank account or accounts as customer credit cards are authorized.

   b. Funds received by the merchant account(s) automatically transfer into a specific processing bank account set up to receive funds for the sales of only one particular product. Often, multiple merchant accounts flow into one processing account. Each product may have one or more specific processing accounts.

   c. Funds are transferred from the processing accounts into the operating account of the company that markets and sells that product. If companies sell more than one product the proceeds from the sales of each product flow through unique

merchant accounts into specific processing accounts before being transferred into the operating account of the marketing company.

    d.   Company expenses and profit distributions are disbursed through the operating account of that company.

### Analysis and Methodology

65.  At the request of counsel I examined the cash flow associated with the sales of Peak Nitric Oxide ("Peak"). Peak is the main product sold by Wellness Labs, LLC. I was provided with a list of merchant, processing and marketing company bank accounts. Peak sales are processed through nine merchant accounts that flow into three processing accounts.  (See **Attachment D** and **Attachment F**)

66. My general approach to determine if the accounts associated with Peak sales have been maintained separately was to analyze the merchant, processing and marketing company accounts on an account-by-account basis by 1) reviewing the general ledger, the account statements and other supporting documentation; and, 2) reconciling the general ledger and account statements.

67. I reviewed the merchant account statements and agreements to determine that the merchant accounts identified were Peak product merchant accounts. I also reviewed the merchant account applications, which provided the name and number of the processing account associated with each merchant account.

68. I reviewed the general ledger activity for the processing accounts noting that the sales proceeds were received from merchant accounts. I was able to identify which merchant accounts deposited proceeds by reviewing the bank statements as further described below. I was also able to trace sales proceeds from the processing accounts to the sales company operating account by reviewing the general ledgers for both the processing

accounts and the marketing company operating account.

69. I reviewed the general ledger activity for the marketing company operating account. I identified all of the deposits and the sources of those deposits. Proceeds from product sales were approximately $4.6 million and deposits from other sources were approximately $900,000 totaling approximately $5.5 million between August 14, 2013 and October 14, 2014.

70. I have classified the non-sales proceeds deposited into the operating account into four general categories: investments, loans, third party refunds, and other. (See **Attachment D** & **Attachment E**)

71. I also reviewed the operating account disbursements totaling approximately $5.2 million. Within those disbursements I saw cash outflows falling into three categories: 1) disbursements to a reserve account, 2) disbursements to non-related parties, and 3) disbursements to related parties. The disbursements to the reserve account equal all of the funds deposited into that account, $27,500. The disbursements to non-related parties include payments of fees and refunds associated with product sales and payments to third party vendors. Disbursements to related parties include payments of loans and disbursements to investors, payments to CSC (most of which was passed through as payments to vendors for Wellness Labs), payments to DJD Distribution for product fulfillment, payments to MDCC for shipping and customer service, and miscellaneous payments to other related parties. (See **Attachment G**)

72. To verify the accuracy of the general ledger I reconciled the transactions recorded in the general ledger to the transactions reported on operating and processing account bank statements.

DECLARATION OF
VICTOR LIPNITSKY

a.  I reviewed bank statements and general ledgers for the Operating Account from August 14, 2013 through October 14, 2014.  I was able to reconcile every transaction by amount and description for the aforementioned time period.  Deposits totaled approximately $5.5 million (See **Attachment D**).

b.  I reviewed bank statements and general ledgers for the Processing Accounts from September 2, 2013 to October 10, 2014.  I was able to reconcile every transaction by amount and description during the aforementioned time period. All of the Processing Account transactions were either transfers to or from the Wellness Labs Operating Account or merchant accounts.

## X.  PROFESSIONAL FEE ARRANGEMENT

73. My hourly billing rate is $295 per hour, billing rates for those assisting me range from $140 to $295 per hour for services performed in this matter.  In addition, I will be reimbursed for all reasonable out-of-pocket expenses incurred in connection with my analyses and testimony in this case.  Neither my compensation, nor Stout Risius Ross, Inc.'s compensation, is dependent on the outcome of this matter or the opinions expressed in this report.

Victor Lipnitsky                                    December 5, 2014

DECLARATION OF
VICTOR LIPNITSKY

17



# Victor Y. Lipnitsky, CPA, CFE, CIRA

**Director**
Direct +1.410.775.4071
Mobile +1.443.794.7586
vlipnitsky@srr.com

**Education**

B.A.
State University of New
York at Stony Brook
*Economics*

**Professional
Designations**

Certified Public
Accountant

Certified Fraud Examiner

Certified Insolvency and
Restructuring Advisor

**Professional
Affiliations**

Maryland Association of
Certified Public
Accountants

Association of Certified
Fraud Examiners

Association of
Insolvency and
Restructuring Advisors

Victor Y. Lipnitsky is a Director in the Dispute Advisory & Forensic Services Group of SRR. He has extensive experience as a financial consultant to trial lawyers, bankruptcy trustees, in-house counsel, and special committees in complex commercial litigation matters, fraud investigations, and matters related to bankruptcy and reorganization.

Commercial litigation matters that Mr. Lipnitsky advises on involve breach of contract, wrongful termination, post-merger and acquisition disputes, shareholder disputes, accounting malpractice, non-compete claims, and disputes related to business transactions.  Fraud investigation matters include employee embezzlement, money laundering, asset tracing (both national and international), bank and securities fraud, false financial reporting, and Foreign Corrupt Practices Act violations. Consulting in bankruptcy and reorganization proceedings include day-to-day business operations, asset and cash flow management, insolvency determination, preference and fraudulent conveyance claims, orderly liquidation, and creditor negotiations.

Mr. Lipnitsky has worked with clients including Fannie Mae, Ernst & Young, Lincoln National Life Insurance Company, US Food, Capital Funding Group, the U.S. Department of Justice, and multiple state Attorney General offices across a broad range of industries including real estate, healthcare, banking and finance, tobacco, insurance, nonprofit, construction, and professional services, among others.

Mr. Lipnitsky has provided expert witness and summary witness testimony on matters involving forensic accounting, bankruptcy and compliance in arbitration and federal court proceedings. Mr. Lipnitsky also presented investigation findings to special committees of the board of directors, unsecured creditors' committees, and state and federal regulators.  Recently, Mr. Lipnitsky was retained by the U.S. Department of Justice to provide a forensic accounting analysis and served as an expert witness in conjunction with the Government's prosecution of a multimillion dollar fraud scheme.

Mr. Lipnitsky has presented continuing education seminars on the subjects of fraud and forensics and preference and fraudulent conveyance claims in bankruptcy.

Prior to joining SRR, Mr. Lipnitsky was a Director with the regional consulting firm, Invotex.

Mr. Lipnitsky holds a Bachelor's of Arts degree in Economics from the State University of New York (SUNY) at Stony Brook and is a Certified Public Accountant, Certified Fraud Examiner, and Certified Insolvency and Restructuring Advisor. He was the recipient of the Legal Aid Society's 2014 Pro Bono Publico Award.

Investment
Banking

Valuation
& Financial Opinions

Dispute Advisory
& Forensic Services

Atlanta | Baltimore | Chicago | Cleveland | Dallas | Denver | Detroit
Houston | Los Angeles | New York | Tysons Corner | Washington D.C.

www.SRR.com



**STOUT | RISIUS | ROSS**

# Victor Y. Lipnitsky, CPA, CFE, CIRA

**Director**
**Direct +1.410.775.4071**
**Mobile +1.443.794.7586**
**vlipnitsky@srr.com**

**Testimony Experience:**

Senate Acceptance Corp, Debtor Chapter 11; No. 13-30244, In the United States Bankruptcy Court for The District of Maryland Greenbelt Division. (May 24, 2012)

Alan B. Fabian and Jacqueline M. Richards-Fabian, v. The UNITED STATES; No. 10-455 T, In the United States Court of Federal Claims. (April 17, 2013)

In the Proceedings Before an Arbitration Panel Concerning the NPM Adjustment for 2003 Pursuant to Section XI (c) of the Tobacco Master Settlement Agreement. (October 23, 2012)

Alter Communication, Inc. (Case No.10-18241-NA), In the United States Bankruptcy Court for the District of Maryland (Baltimore Division). (April 3, 2012)

Federal Trade Commission v. Health Formulas, LLC, et al.                    **ATTACHMENT B**

## Documents Considered

### _Accounts Payable Lists_

| |
|---|
| Brilliant Skin #2028 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Discount Provisions #2021 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Extamax Direct Marketing #2006 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Health Formulas #2011 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Longhorn Marketing LLC #2019 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Luminous Skin #2029 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| MDCC LLC #2012 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Men's Health Formula #2018 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Method Direct Marketing #2004 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Skinny, 7 #2026 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| VIP Savings #2017 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Weight Loss Dojo #2010 Accounts Payable List, 06/05/2014 - 10/09/2014 |
| Wellness Labs #2024 Accounts Payable List, 06/05/2014 - 10/09/2014 |

### _Bank Statements_

| |
|---|
| Wellness Labs LLC Account number ███6005 statement for the period April 1, 2014 to April 30, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period August 1, 2014 to August 31, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period August 7, 2013 to August 31, 2013 |
| Wellness Labs LLC Account number ███6005 statement for the period December 1, 2013 to December 31, 2013 |
| Wellness Labs LLC Account number ███6005 statement for the period February 1, 2014 to February 28, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period January 1, 2014 to January 31, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period July 1, 2014 to July 31, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period June 1, 2014 to June 30, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period March 1, 2014 to March 31, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period May 1, 2014 to May 31, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period November 1, 2013 to November 30, 2013 |
| Wellness Labs LLC Account number ███6005 statement for the period October 1, 2014 to October 31, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period October 1, 2013 to October 31, 2013 |
| Wellness Labs LLC Account number ███6005 statement for the period September 1, 2014 to September 30, 2014 |
| Wellness Labs LLC Account number ███6005 statement for the period September 1, 2013 to September 30, 2013 |
| Wellness Labs LLC Reserve Account Account number ███6655 statement for the period August 1, 2014 to August |
| Wellness Labs LLC Reserve Account Account number ███6655 statement for the period July 21, 2014 to July 31, |
| Wellness Labs LLC Reserve Account Account number ███6655 statement for the period October 1, 2014 to October 31, 2014 |
| Wellness Labs LLC Reserve Account Account number ███6655 statement for the period September 1, 2014 to September 30, 2014 |
| 458 Media LLC Account number ███3652 statement for the period August 1, 2014 to August 31, 2014 |
| 458 Media LLC Account number ███3652 statement for the period October 1, 2014 to October 31, 2014 |
| 458 Media LLC Account number ███3652 statement for the period September 1, 2014 to September 31, 2014 |
| Pure and Natural Health Products LLC Account number 1894745130 statement for the period April 1, 2014 to April 30, 2014 |
| Pure and Natural Health Products LLC Account number ███5130 statement for the period August 1, 2014 to August 31, 2014 |
| Pure and Natural Health Products LLC Account number ███5130 statement for the period December 1, 2013 to December 31, 2013 |
| Pure and Natural Health Products LLC Account number ███5130 statement for the period February 1, 2014 to February 28, 2014 |
| Pure and Natural Health Products LLC Account number ███5130 statement for the period January 1, 2014 to January 31, 2014 |
| Pure and Natural Health Products LLC Account number ███5130 statement for the period July 1, 2014 to July 31, 2014 |
| Pure and Natural Health Products LLC Account number ███5130 statement for the period June 1, 2014 to June 30, 2014 |

Federal Trade Commission v. Health Formulas, LLC, et al.                    **ATTACHMENT B**

**Documents Considered**

| |
|---|
| Pure and Natural Health Products LLC Account number ████5130 statement for the period March 1, 2014 to March 31, 2014 |
| Pure and Natural Health Products LLC Account number ████5130 statement for the period May 1, 2014 to May 31, 2014 |
| Pure and Natural Health Products LLC Account number ████5130 statement for the period November 1, 2013 to November 30, 2013 |
| Pure and Natural Health Products LLC Account number ████5130 statement for the period October 1, 2014 to October 31, 2014 |
| Pure and Natural Health Products LLC Account number ████5130 statement for the period October 1, 2013 to October 31, 2013 |
| Pure and Natural Health Products LLC Account number ████5130 statement for the period September 1, 2013 to September 30, 2013 |
| Pure and Natural Health Products LLC Account number ████5130 statement for the period September 1, 2014 to September 30, 2014 |
| Wellness Products LLC Account number ████296 statement for the period August 8, 2013 to August 31, 2013 |
| Wellness Products LLC Account number ████296 statement for the period September 1, 2013 to September 30, |
| Wellness Products LLC Account number ████5296 statement for the period October 1, 2013 to October 31, 2013 |
| Wellness Products LLC Account number ████5296 statement for the period November 1, 2013 to November 30, |
| Wellness Products LLC Account number ████5296 statement for the period December 1, 2013 to December 31, |
| Wellness Products LLC Account number ████5296 statement for the period January 1, 2014 to January 31, 2014 |
| Wellness Products LLC Account number ████5296 statement for the period February 1, 2014 to February 28, 2014 |
| Wellness Products LLC Account number ████5296 statement for the period March 1, 2014 to March 31, 2014 |
| Wellness Products LLC Account number ████5296 statement for the period April 1, 2014 to April 30, 2014 |
| Wellness Products LLC Account number ████5296 statement for the period May 1, 2014 to May 31, 2014 |
| Wellness Products LLC Account number ████5296 statement for the period June 1, 2014 to June 30, 2014 |
| Wellness Products LLC Account number ████5296 statement for the period July 1, 2014 to July 31, 2014 |
| Wellness Products LLC Account number ████5296 statement for the period August 1, 2014 to August 31, 2014 |
| Wellness Products LLC Account number ████5296 statement for the period September 1, 2014 to September 30, |
| Wellness Products LLC Account number ████5296 statement for the period October 1, 2014 to October 31, 2014 |
| Wellness Products LLC Account number ████5965 statement for the period August 7, 2013 to August 31, 2013 |
| Wellness Products LLC Account number ████5965 statement for the period September 1, 2013 to September 30, |
| Wellness Products LLC Account number ████5965 statement for the period October 1, 2013 to October 31, 2013 |
| Wellness Products LLC Account number ████5965 statement for the period November 1, 2013 to November 30, |
| Wellness Products LLC Account number ████5965 statement for the period December 1, 2013 to December 31, |
| Wellness Products LLC Account number ████5965 statement for the period January 1, 2014 to January 31, 2014 |
| Wellness Products LLC Account number ████5965 statement for the period February 1, 2014 to February 28, 2014 |
| Wellness Products LLC Account number ████5965 statement for the period March 1, 2014 to March 31, 2014 |
| Wellness Products LLC Account number ████5965 statement for the period April 1, 2014 to April 30, 2014 |
| Wellness Products LLC Account number ████5965 statement for the period May 1, 2014 to May 31, 2014 |
| Wellness Products LLC Account number ████5965 statement for the period June 1, 2014 to June 30, 2014 |
| Wellness Products LLC Account number ████5965 statement for the period July 1, 2014 to July 31, 2014 |
| Wellness Products LLC Account number ████5965 statement for the period August 1, 2014 to August 31, 2014 |
| Wellness Products LLC Account number ████5965 statement for the period September 1, 2014 to September 30, |
| Wellness Products LLC Account number ████5965 statement for the period October 1, 2014 to October 31, 2014 |

*Cash Flow Reports*

| |
|---|
| Method Direct , LLC Cash Flow Report as of October 9, 2014 |
| Extamax Direct Marketing, LLC Cash Flow Report as of October 9, 2014 |
| Weight Loss Dojo, LLC Cash Flow Report as of October 9, 2014 |
| Health Formulas, LLC Cash Flow Report as of October 9, 2014 |
| MDCC, LLC Cash Flow Report as of October 9, 2014 |
| VIP Savings LLC Cash Flow Report as of October 9, 2014 |
| Men's Health Formulas, LLC Cash Flow Report as of October 9, 2014 |
| Longhorn Marketing LLC Cash Flow Report as of October 9, 2014 |
| Discount Provisions, LLC Cash Flow Report as of October 9, 2014 |

Federal Trade Commission v. Health Formulas, LLC, et al.                          **ATTACHMENT B**

## Documents Considered

| |
|---|
| Wellness Labs LLC Cash Flow Report as of October 9, 2014 |
| Skinny 7 LLC Cash Flow Report as of October 9, 2014 |
| Brilliant Skin LLC Cash Flow Report as of October 9, 2014 |
| Luminous Skin LLC Cash Flow Report as of October 9, 2014 |
| F12 Media LLC Cash Flow Report as of October 9, 2014 |
| 458 Media LLC Cash Flow Report as of October 9, 2014 |

*Financial Data*

| |
|---|
| Barrel Roll 2010 Financial Data |
| Barrel Roll 2011 Financial Data |
| Barrel Roll 2012 Financial Data |
| Barrel Roll 2013 Financial Data |
| Barrel Roll 2014 Financial Data |
| Brilliant Skin 2013 Financial Data |
| Brilliant Skin 2014 Financial Data |
| BSC Marketing 2011 Financial Data |
| BSC Marketing 2012 Financial Data |
| BSC Marketing 2013 Financial Data |
| BSC Marketing 2014 Financial Data |
| Cherry Hill Marketing LLC 2014 Financial Data |
| CSA Ventures 2011 Financial Data |
| CSA Ventures 2012 Financial Data |
| CSA Ventures 2013 Financial Data |
| CSA Ventures 2014 Financial Data |
| Diet Concepts 2013 Financial Data |
| Diet Concepts 2014 Financial Data |
| Discount Provisions, LLC 2012 Financial Data |
| Discount Provisions, LLC 2013 Financial Data |
| Discount Provisions, LLC 2014 Financial Data |
| Extamax Direct Marketing 2010 Financial Data |
| Extamax Direct Marketing 2011 Financial Data |
| Extamax Direct Marketing 2012 Financial Data |
| Extamax Direct Marketing 2013 Financial Data |
| Extamax Direct Marketing 2014 Financial Data |
| F12 Media LLC 2014 Financial Data |
| GCB Marketing LLC 2013 Financial Data |
| GCB Marketing LLC 2014 Financial Data |
| Health Product Direct 2013 Financial Data |
| Health Product Direct 2014 Financial Data |
| KMS Marketing 2011 Financial Data |
| KMS Marketing 2012 Financial Data |
| KMS Marketing 2013 Financial Data |
| KMS Marketing 2014 Financial Data |
| Luminous Skin LLC 2013 Financial Data |
| Luminous Skin LLC 2014 Financial Data |
| Men's Health Formulas 2011 Financial Data |
| Men's Health Formulas 2012 Financial Data |
| Men's Health Formulas 2013 Financial Data |
| Men's Health Formulas 2014 Financial Data |
| Method Films 2010 Financial Data |
| Method Films 2011 Financial Data |
| Method Films 2012 Financial Data |
| Method Films 2013 Financial Data |
| Method Films 2014 Financial Data |
| Moringa Marketing LLC 2013 Financial Data |

Federal Trade Commission v. Health Formulas, LLC, et al.                    **ATTACHMENT B**

## Documents Considered

| |
|---|
| Moringa Marketing LLC 2014 Financial Data |
| Natural products Direct 2013 Financial Data |
| Natural products Direct 2014 Financial Data |
| Northbound Marketing LLC 2013 Financial Data |
| Northbound Marketing LLC 2014 Financial Data |
| Northern Health Products LLC Financial Data |
| Northern Health Products LLC Financial Data |
| Pure and Natural Health Products LLC 2013 Financial Data |
| Pure and Natural Health Products LLC 2014 Financial Data |
| Pure and Simple Health Products LLC 2013 Financial Data |
| Pure and Simple Health Products LLC 2014 Financial Data |
| Radiant Skin 2013 Financial Data |
| Radiant Skin 2014 Financial Data |
| Shimmering Skin LLC 2013 Financial Data |
| Shimmering Skin LLC 2014 Financial Data |
| Skinny 7 2013 Financial Data |
| Skinny 7 2014 Financial Data |
| Tindy Films 2010 Financial Data |
| Tindy Films 2011 Financial Data |
| Tindy Films 2012 Financial Data |
| Tindy Films 2013 Financial Data |
| Tindy Films 2014 Financial Data |
| Wellness Labs 2013 Financial Data |
| Wellness Labs 2014 Financial Data |
| Wellness Products 2013 Financial Data |
| Wellness Products 2014 Financial Data |
| Yacon Marketing LLC 2013 Financial Data |
| Yacon Marketing LLC 2014 Financial Data |
| DJD Distribution LLC 2011 Financial Data |
| Weight Loss Dojo, LLC 2011 Financial Data |
| Extamax Direct Marketing, LLC 2011 Financial Data |
| Health Formulas, LLC 2011 Financial Data |
| MDCC, LLC 2011 Financial Data |
| Method Direct, LLC 2011 Financial Data |
| DJD Distribution LLC 2012 Financial Data |
| Weight Loss Dojo, LLC 2012 Financial Data |
| Extamax Direct Marketing, LLC 2012 Financial Data |
| Health Formulas, LLC 2012 Financial Data |
| MDCC, LLC 2012 Financial Data |
| Method Direct, LLC 2012 Financial Data |
| Pure Vitamins, LLC 2012 Financial Data |
| VIP Savings LLC 2012 Financial Data |
| DJD Distribution LLC 2013 Financial Data |
| Weight Loss Dojo, LLC 2013 Financial Data |
| Extamax Direct Marketing, LLC 2013 Financial Data |
| Health Formulas, LLC 2013 Financial Data |
| Longhorn Marketing LLC 2013 Financial Data |
| MDCC, LLC 2013 Financial Data |
| Method Direct, LLC 2013 Financial Data |
| Pure Vitamins, LLC 2013 Financial Data |
| VIP Savings LLC 2013 Financial Data |
| DJD Distribution LLC 2014 Financial Data |
| Weight Loss Dojo, LLC 2014 Financial Data |
| Extamax Direct Marketing, LLC 2014 Financial Data |
| Health Formulas, LLC 2014 Financial Data |

Federal Trade Commission v. Health Formulas, LLC, et al.                    **ATTACHMENT B**

## Documents Considered

| |
|---|
| Longhorn Marketing LLC 2014 Financial Data |
| MDCC, LLC 2014 Financial Data |
| Method Direct, LLC 2014 Financial Data |
| Pure Vitamins, LLC 2014 Financial Data |
| VIP Savings LLC 2014 Financial Data |

*General Ledgers*

| |
|---|
| Barrel Roll LLC 2011 General Ledger |
| Barrel Roll LLC 2012 General Ledger |
| Barrel Roll LLC 2013 General Ledger |
| Barrel Roll LLC 2014 General Ledger |
| Brilliant Skin LLC 2013 General Ledger |
| Brilliant Skin LLC 2014 General Ledger |
| Cherry Hill Marketing LLC 2014 General Ledger |
| Diet Concepts LLC 2013 General Ledger |
| Diet Concepts LLC 2014 General Ledger |
| Discount Provisions LLC 2012 General Ledger |
| Discount Provisions LLC 2013 General Ledger |
| Discount Provisions LLC 2014 General Ledger |
| DJD Distribution LLC 2011 General Ledger |
| DJD Distribution LLC 2012 General Ledger |
| DJD Distribution LLC 2013 General Ledger |
| DJD Distribution LLC 2014 General Ledger |
| Extamax LLC 2011 General Ledger |
| Extamax LLC 2012 General Ledger |
| Extamax LLC 2013 General Ledger |
| Extamax LLC 2014 General Ledger |
| F12 Media LLC2014 General Ledger |
| GCB Marketing LLC 2013 General Ledger |
| GCB Marketing LLC 2014 General Ledger |
| Health Formulas LLC 2011 General Ledger |
| Health Formulas LLC 2012 General Ledger |
| Health Formulas LLC 2013 General Ledger |
| Health Formulas LLC 2014 General Ledger |
| Health Products Direct LLC 2013 General Ledger |
| Health Products Direct LLC 2014 General Ledger |
| Longhorn Marketing LLC 2012 General Ledger |
| Longhorn Marketing LLC 2013 General Ledger |
| Longhorn Marketing LLC 2014 General Ledger |
| Luminous Skin LLC 2013 General Ledger |
| Luminous Skin LLC 2014 General Ledger |
| MDCC LLC 2011 General Ledger |
| MDCC LLC 2012 General Ledger |
| MDCC LLC 2013 General Ledger |
| MDCC LLC 2014 General Ledger |
| Men's Health Formulas LLC 2011 General Ledger |
| Men's Health Formulas LLC 2012 General Ledger |
| Men's Health Formulas LLC 2013 General Ledger |
| Men's Health Formulas LLC 2014 General Ledger |
| Method Direct LLC 2011 General Ledger |
| Method Direct LLC 2012 General Ledger |
| Method Direct LLC 2013 General Ledger |
| Method Direct LLC 2014 General Ledger |
| Moringa Marketing LLC 2013 General Ledger |
| Moringa Marketing LLC 2014 General Ledger |

Federal Trade Commission v. Health Formulas, LLC, et al.                    **ATTACHMENT B**

## Documents Considered

| |
|---|
| Natural Products Direct LLC 2013 General Ledger |
| Natural Products Direct LLC 2014 General Ledger |
| Northbound Marketing LLC 2013 General Ledger |
| Northbound Marketing LLC 2014 General Ledger |
| Northern Health Products LLC 2013 General Ledger |
| Northern Health Products LLC 2014 General Ledger |
| Radiant Skin LLC 2013 General Ledger |
| Radiant Skin LLC 2014 General Ledger |
| Shimmering Skin LLC 2013 General Ledger |
| Shimmering Skin LLC 2014 General Ledger |
| Skinny 7 LLC 2013 General Ledger |
| Skinny 7 LLC 2014 General Ledger |
| Tindy Film; LLC 2011 General Ledger |
| Tindy Films LLC 2012 General Ledger |
| Tindy Films LLC 2013 General Ledger |
| Tindy Films LLC 2014 General Ledger |
| VIP Savings LLC 2012 General Ledger |
| VIP Savings LLC 2013 General Ledger |
| VIP Savings LLC 2014 General Ledger |
| Weight Loss Dojo LLC 2011 General Ledger |
| Weight Loss Dojo LLC 2012 General Ledger |
| Weight Loss Dojo LLC 2013 General Ledger |
| Weight Loss Dojo LLC 2014 General Ledger |
| Yacon Marketing LLC 2013 General Ledger |
| Yacon Marketing LLC 2014 General Ledger |
| BSC Marketing LLC 2011 General Ledger |
| BSC Marketing LLC 2012 General Ledger |
| BSC Marketing LLC 2013 General Ledger |
| BSC Marketing LLC 2014 General Ledger |
| CSA Ventures LLC 2011 General Ledger |
| CSA Ventures LLC 2012 General Ledger |
| CSA Ventures LLC 2013 General Ledger |
| CSA Ventures LLC 2014 General Ledger |
| KMS Marketing LLC 2011 General Ledger |
| KMS Marketing LLC 2012 General Ledger |
| KMS Marketing LLC 2013 General Ledger |
| KMS Marketing LLC 2014 General Ledger |
| Pure and Simple Health Products LLC 2013 General Ledger |
| Pure and Simple Health Products LLC 2014 General Ledger |
| Pure Vitamins LLC 2012 General Ledger |
| Pure Vitamins LLC 2013 General Ledger |
| Pure Vitamins LLC 2014 General Ledger |
| 458 Media LLC 2014 General Ledger |
| Men's Health General Ledger |
| Pure and Natural Health Products LLC 2013 General Ledger |
| Pure and Natural Health Products LLC 2014 General Ledger |
| Wellness Labs LLC 2013 General Ledger |
| Wellness Labs LLC 2014 General Ledger |
| Wellness Products LLC 2013 General Ledger |
| Wellness Products LLC 2014 General Ledger |

*Legal Filings*

| |
|---|
| Complaint for permanent injunction and other relief |
| Plaintiff's reply in support of its motion for a preliminary injunction |
| Notice of filing of report of temporary receiver's activities from October 14, 2014 through November 11, 2014 |

Federal Trade Commission v. Health Formulas, LLC, et al.                    **ATTACHMENT B**

## Documents Considered

| Plaintiff Federal Trade Commission's Memorandum of Points and Authorities in Support of its *Ex Parte* Motion for a Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, and Other Equitable Relief |
| --- |

*Tax Returns*

| |
| --- |
| DJD Distribution LLC 2012 Tax Returns |
| DJD Distribution LLC 2013 Tax Returns |
| DJD Distribution LLC 2011, Tax Returns |
| Extamax Direct LLC 2011 Tax Return |
| Extamax Direct Marketing LLC 2013 Tax Returns |
| Health Formulas LLC 2013 Tax Returns |
| Health Formulas LLC, 2011 Tax Return |
| Health Formulas LLC, 2012 Tax Return |
| Longhorn Marketing LLC 2011 Tax Return |
| Longhorn Marketing LLC 2012 Tax Return |
| Longhorn Marketing LLC 2013 Tax Return |
| Method Direct LLC 2011 Tax Returns |
| Method Direct LLC 2012 Tax Returns |
| Method Direct LLC 2013 Tax Returns |
| Pure Vitamins LLC 2012 Tax Return |
| Pure Vitamins LLC 2013 Tax Return |
| VIP Savings LLC 2013 Tax Return |
| Weight Loss Dojo LLC 2011 Tax Returns |
| Weight Loss Dojo LLC 2012 Tax Returns |
| Weight Loss Dojo LLC 2013 Tax Returns |
| 458 Media LLC 2014 Financial Data |
| Jason and Danelle Miller 2013 Tax Returns |
| Pure & Natural Health Products LLC 2013 Tax Return |
| Wellness Labs LLC 2013 Tax Returns |
| Wellness Products LLC 2013 Tax Return |

*Other*

| |
| --- |
| Chase _9489 Allocation Spreadsheet, 02/14/2011 - 10/07/2014 |
| Picture of refund transfer |
| Email from Danelle Miller to Rick Gomez, Subject: 458 Media, dated September 5, 2014 |
| Declaration of John Aiken & Attachments |
| Method Direct Invoice #780, dated 9/24/2013, Bill to: Wellness Labs |
| Declaration of Emil T. George & Attachments |
| CashFlows Account Statements |
| Peak Nitric Oxide Merchant Statements |
| Peak Nitric Oxide Merchant Applications |
| Wellness Labs, LLC Sales Invoices to Men's Health Formulas |
| Company Structure |
| Master List of Bank Accounts |
| Signature Cards 7526 Reserves |
| VPS 0450 Reserves |
| Email from Keith Smukler to Danelle Miller and Rick Gomez, Subject: RE: Wellness Labs Comerica 6088, dated May 8, 2014 |
| Peak Nitric Oxide Merchant Reserve Agreements |

Federal Trade Commission v. Health Formulas, LLC, et al.                                **ATTACHMENT C**

**Unnamed/Unrelated Products**

| Product | Marketing Company |
|---|---|
| ExtaMax | ExtaMax Direct Marketing, LLC |
| Focus Formula | Wellness Labs, LLC |
| NitroPrime | ExtaMax Direct Marketing, LLC |
| Peak Nitric Oxide | Wellness Labs, LLC |
| Rx Repair | Brilliant Skin, LLC |
| Rx Repair | Luminous Skin, LLC |
| Skinny 6 Super Supplement | Skinny 7, LLC |
| supergrocerysavers.com | Discount Provisions, LLC |

Federal Trade Commission v. Health Formulas, LLC, et al.                    **ATTACHMENT D**
**Wellness Labs, LLC Operating Account Inflows**



**Sources/Notes:**
Attachment covers the period August 1, 2013 – October 14, 2014.
[1] Amounts per G/L's of Wellness Labs, 458 Media, Pure and Natural Health Products, and Wellness Products.
[2] See Attachment E.
[3] X3652 also received $17,558 for non-product sales.

Prepared by Stout Risius Ross

Federal Trade Commission v. Health Formulas, LLC, et al.                              **ATTACHMENT E**

**Sources of Cash Inflows to Wellness Labs Operating Account(s)**

| Deposit Description [1] | Cash In [1] | | Percent of Total | Category of Funds | |
|---|---|---|---|---|---|
| **Account No. X6005** | | | | | |
| 458 MEDIA LLC | $ | 393,174 | 7.1% | Product Sales | [3] |
| PURE AND NATURAL HEALTH PRODUCTS | | 51,396 | 0.9% | Product Sales | [4] |
| WELLNESS PRODUCTS LLC | | 4,167,932 | 75.4% | Product Sales | [5] |
| CHECK OR MONEY ORDER(S) | | 284 | 0.0% | Product Sales | [1][8] |
| Subtotal - Product Sales | | 4,612,786 | 83.4% | | |
| | | | | | |
| BRANDON & RISA CHAPNICK | | 34,115 | 0.6% | Investments | [1] |
| KEITH SMUKLER | | 7,875 | 0.1% | Investments | [1] |
| MAMANON LLC | | 13,136 | 0.2% | Investments | [1] |
| MARCIA CHAPNICK | | 26,240 | 0.5% | Investments | [1] |
| METHOD FILMS, INC. | | 220,500 | 4.0% | Investments | [2] |
| Subtotal - Investments | | 301,865 | 5.5% | | |
| | | | | | |
| METHOD FILMS, INC. | | 389,000 | 7.0% | Loans | [2] |
| | | | | | |
| CHAPNICK SMUKLER & CHAPNICK | | 289 | 0.0% | Third Party Refund | [1] |
| CHAPNICK SMUKLER & CHAPNICK CLIENT TRUST ACCT | | 13,136 | 0.2% | Third Party Refund | [1] |
| INTERNET DIRECT RESPONSE LLC | | 456 | 0.0% | Third Party Refund | [1] |
| INTERNET GORILLA LLC | | 5,471 | 0.1% | Third Party Refund | [1] |
| MARKETING ARCHITECTS, INC. | | 180,966 | 3.3% | Third Party Refund | [1] |
| NORTHEAST ADVERTISING INC | | 500 | 0.0% | Third Party Refund | [1] |
| STATE BOARD OF EQUALIZATION | | 2,106 | 0.0% | Third Party Refund | [1] |
| Subtotal - Third Party Refunds | | 202,923 | 3.7% | | |
| | | | | | |
| MEN'S HEALTH FORMULAS LLC | | 19,944 | 0.4% | Other | [6] |
| TFR FROM COMERICA A/C #1894746088 | | 1,483 | 0.0% | Other | [7] |
| Subtotal - Other | | 21,427 | 0.4% | | |
| | | | | | |
| **Total Deposits** | **$** | **5,528,001** | | | |
| | | | | | |
| **Account No. X6655 (Reserve Account)** | | | | | |
| TFR FROM COMERICA MAIN X6005 | $ | 27,500 | | | |

Federal Trade Commission v. Health Formulas, LLC, et al.                                    **ATTACHMENT E**
**Sources of Cash Inflows to Wellness Labs Operating Account(s)**

**Sources/Notes:**
[1] Wellness Labs, LLC General Ledger for 2013 and 2014.
[2] Method Films, Inc. General Ledger for 2013 and 2014.
[3] 458 Media, LLC General Ledger for 2013 and 2014. All incoming cash traced to account number X3652.
[4] Pure and Natural Health Products, LLC General Ledger for 2013 and 2014. All incoming cash traced to account number X5130.
[5] Wellness Products, LLC General Ledger for 2013 and 2014. All incoming cash traced to account number X5296 and X5965.
[6]  Sale of Inventory by Wellness Labs, LLC to Mens Health Formula.  Per Invoice #1 dated 7/29/14 for $12,175.77 and Invoice #2
dated 8/5/14 for $7,768.59.
[7] Men's Health Formula product sales flowed into Wellness Labs account in error.  All but $1,483.04 was transferred to Men's Health Formula
operating account.  The $1,483.04 transferred from X6088 to X6005 was an error which was to be fixed before calendar year end per Danelle Miller.

[8] Offsetting account in the general ledger is Sales.

Federal Trade Commission v. Health Formulas, LLC, et al.                                    **ATTACHMENT F**

**Wellness Labs Bank Accounts**

| Merchant Account Name | Product | Account # | Bank | Account Balance | |
|---|---|---|---|---|---|
| 458 Media, LLC | Peak Nitric Oxide | X2902 | BankCard USA | $ 24,461.81 | [8] |
| 458 Media, LLC | Peak Nitric Oxide | X2894 | BankCard USA | 26,996.30 | [8] |
| Wellness Products, LLC | Peak Nitric Oxide | X3183 | Meritus | 96,781.06 | [8] |
| Wellness Products, LLC | Peak Nitric Oxide | X6466 | BankCard USA | 40,000.00 | [8] |
| Wellness Products, LLC | Peak Nitric Oxide | X9338 | GMA | 12,907.48 | [8] |
| Wellness Products, LLC | Peak Nitric Oxide | X7526 | Signature Card Solutions | 16,291.53 | [2] |
| Wellness Products, LLC | Peak Nitric Oxide | X0450 | Vision Payment Solutions | 98,614.34 | [1] |
| Wellness Products, LLC | Peak Nitric Oxide | X6482 | BankCard USA | 40,000.00 | [8] |
| Wellness Products, LLC | Peak Nitric Oxide | X3203 | Cynergy | 2,116.90 | [10] |
| Pure and Natural Health Products, LLC | Focus Formula | X7340 | BankCard USA | | |
| | | | | **$ 358,169.42** | |

| Processing Account Name | | Account # | Bank | Account Balance | |
|---|---|---|---|---|---|
| 458 Media, LLC | Peak Nitric Oxide | X3652 | Comerica | $ 54,336.73 | [4] |
| Wellness Products, LLC | Peak Nitric Oxide | X5296 | Comerica | 59,590.38 | [6] |
| Wellness Products, LLC | Peak Nitric Oxide | X5965 | Comerica | 82,711.08 | [5] |
| Pure and Natural Health Products, LLC | Focus Formula | X5130 | Comerica | 1,743.02 | [3] |
| | | | | **$ 198,381.21** | |

| Marketing Company Operating Account Name | | Account # | Bank | Account Balance | |
|---|---|---|---|---|---|
| Wellness Labs, LLC | Peak Nitric Oxide & Focus Formula | X6005 | Comerica | $ 290,746.75 | [7] |

| Reserve Account Name | Account # | Bank | Account Balance | |
|---|---|---|---|---|
| | X6655 | Comerica | $ 27,500.00 | [9] |

**Total**                                                                            **$ 874,797.38**

Federal Trade Commission v. Health Formulas, LLC, et al.                    **ATTACHMENT F**

**Wellness Labs Bank Accounts**

**Source:**

[1]  VPS Aurora screen shot for X0450 on 12/4/14.

[2] Signature Card Services Reserves Held in Date Range for X5260 as of 12/3/14.

[3] Comerica Bank Account Statement for X5130 as of 10/31/14.

[4] Comerica Bank Account Statement for X3652 as of 10/31/14.

[5] Comerica Bank Account Statement for X5965 as of 10/31/14.

[6] Comerica Bank Account Statement for X5296 as of 10/31/14.

[7] Comerica Bank Account Statement for X6005 as of 10/31/14.

[8] Reserve account balance estimated by Danelle Miller.

[9] Comerica Bank Account Statement for X6655 as of 10/31/14.

[10] New account opened on September 30, 2014 per Danelle Miller.

Federal Trade Commission v. Health Formulas, LLC, et al.                           **ATTACHMENT G**
**Wellness Labs, LLC Operating Account Outflows** [1]



**Sources/Notes:**
[1] Wellness Labs, LLC General Ledger for 2013 and 2014.
[2] Payments to Method Direct, LLC, Skinny 7 LLC.

Prepared by Stout Risius Ross