DAVID C. SHONKA
Acting General Counsel

DANIELLE ESTRADA
destrada@ftc.gov
MELISSA DICKEY
mdickey@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, NW, CC-8528
Washington, DC 20580
202-326-2630 (Estrada)
202-326-2662 (Dickey)
202-326-3395 (Fax)

BLAINE T. WELSH
blaine.welsh@usdoj.gov
Assistant United States Attorney
Nevada Bar No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, NV 89101
702-388-6336
702-388-6787 (Fax)

Attorneys for Plaintiff Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>      Plaintiff,<br><br>v.<br><br>HEALTH FORMULAS, LLC, *et al.*,<br><br>      Defendants. | Civil Action No. 2:14-cv-01649-RFB-GWF<br><br><br>**NOTICE OF FILING STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AS TO DEFENDANTS JASON MILLER, DANELLE MILLER, 458 MEDIA LLC; ALPHA BRANDS, LLC; BARREL ROLL, LLC; BLU STELLA, LLC; BRILLIANT SKIN LLC; BSC MARKETING, LLC; CHERRY HILL MARKETING, LLC; CSA VENTURES, LLC; DIET CONCEPTS, LLC; DISCOUNT PROVISIONS L.L.C.; DJD DISTRIBUTION, LLC; EXTAMAX, LLC; F12 MEDIA LLC; FLEX FORMULAS, LLC; GCB MARKETING** |

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**LLC; HEALTH FORMULAS, LLC; HEALTH PRODUCTS DIRECT LLC; KMS MARKETING LLC; LONGHORN MARKETING, LLC; LUMINOUS SKIN LLC; MDCC, LLC; MEN'S HEALTH FORMULAS, LLC; METABOLIC LABS, LLC; METHOD DIRECT, LLC; METHOD FILMS, INC.; MIRACLE MALE, LLC; MORINGA MARKETING LLC; NATURAL PRODUCTS DIRECT LLC; NORTHBOUND MARKETING LLC; NORTHERN HEALTH PRODUCTS LLC; PURE AND NATURAL HEALTH PRODUCTS LLC; PURE AND SIMPLE HEALTH PRODUCTS LLC; PURE VITAMINS, LLC; RADIANT SKIN LLC; SHIMMERING SKIN LLC; SKINNY 7 LLC; TINDY FILMS LLC; WEIGHT LOSS DOJO, LLC; WELLNESS LABS, LLC; WELLNESS PRODUCTS, LLC; VIP SAVINGS, LLC; AND YACON MARKETING LLC.**

Plaintiff, Federal Trade Commission respectfully submits for the Court's review the attached Stipulated Permanent Injunction and Final Order against all the remaining defendants in the matter, Defendants Jason Miller; Danelle Miller; 458 Media LLC; Alpha Brands, LLC; Barrel Roll, LLC; Blu Stella, LLC; Brilliant Skin LLC; BSC Marketing, LLC; Cherry Hill Marketing, LLC; CSA Ventures, LLC; Diet Concepts, LLC; Discount Provisions L.L.C.; DJD Distribution, LLC; Extamax, LLC; F12 Media LLC; Flex Formulas, LLC; GCB Marketing LLC; Health Formulas, LLC; Health Products Direct LLC; KMS Marketing LLC; Longhorn Marketing, LLC; Luminous Skin LLC; MDCC, LLC; Men's Health Formulas, LLC; Metabolic Labs, LLC; Method Direct, LLC; Method Films, Inc.; Miracle Male, LLC; Moringa Marketing LLC; Natural Products Direct LLC; Northbound Marketing LLC; Northern Health Products LLC; Pure and Natural Health Products LLC; Pure and Simple Health Products LLC; Pure Vitamins, LLC; Radiant Skin LLC;

1   Shimmering Skin LLC; Skinny 7 LLC; Tindy Films LLC; Weight Loss Dojo, LLC; Wellness

2   Labs, LLC; Wellness Products, LLC; VIP Savings, LLC; and Yacon Marketing LLC

3   DATED:   April 26, 2016                          Respectfully submitted,

4
                                                     /s/Danielle Estrada
5                                                    DANIELLE ESTRADA
                                                     MELISSA L. DICKEY
6                                                    Federal Trade Commission
                                                     600 Pennsylvania Avenue N.W.
7                                                    Mail Stop CC-8528
                                                     Washington, D.C. 20580
8                                                    (202) 326-2630 (Estrada)
                                                     (202) 326-2662 (Dickey)
9                                                    (202) 326-3395 (facsimile)
                                                     destrada@ftc.gov
10                                                   mdickey@ftc.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

**Certificate of Service**

2          I hereby certify that on April 26, 2016, I electronically filed the foregoing document with

3    the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to all counsel

4    of record.

5

6    Date: April 26, 2016                        /s/Danielle Estrada

7                                                DANIELLE ESTRADA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:14-cv-01649-RFB-GWF |
| Plaintiff, | STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT FOR DEFENDANTS JASON MILLER, DANELLE MILLER, 458 MEDIA LLC; ALPHA BRANDS, LLC; BARREL ROLL, LLC; BLU STELLA, LLC; BRILLIANT SKIN LLC; BSC MARKETING, LLC; CHERRY HILL MARKETING, LLC; CSA VENTURES, LLC; DIET CONCEPTS, LLC; DISCOUNT PROVISIONS L.L.C.; DJD DISTRIBUTION, LLC; EXTAMAX, LLC; F12 MEDIA LLC; FLEX FORMULAS, LLC; GCB MARKETING LLC; HEALTH FORMULAS, LLC; HEALTH PRODUCTS DIRECT LLC; KMS MARKETING LLC; LONGHORN MARKETING, LLC; LUMINOUS SKIN LLC; MDCC, LLC; MEN'S HEALTH FORMULAS, LLC; METABOLIC LABS, LLC; METHOD DIRECT, LLC; METHOD FILMS, INC.; MIRACLE MALE, LLC; MORINGA MARKETING LLC; NATURAL PRODUCTS DIRECT LLC; NORTHBOUND MARKETING LLC; NORTHERN HEALTH PRODUCTS LLC; PURE AND NATURAL HEALTH PRODUCTS LLC; PURE AND SIMPLE HEALTH PRODUCTS LLC; PURE VITAMINS, LLC; RADIANT SKIN LLC; SHIMMERING SKIN LLC; SKINNY 7 LLC; TINDY FILMS LLC; WEIGHT LOSS DOJO, LLC; WELLNESS LABS, LLC; WELLNESS PRODUCTS, LLC; VIP SAVINGS, LLC; AND YACON MARKETING LLC. |
| v. | |
| JASON MILLER, individually and as an officer or manager of Weight Loss Dojo, LLC, Health Formulas, LLC, Method Direct, LLC, Pure Vitamins, LLC, and MDCC, LLC; and | |
| DANELLE MILLER, also known as Danelle Folta and Danelle Kenealy, individually and as an officer or manager of Method Direct, LLC, Health Formulas, LLC, MDCC, LLC, Pure Vitamins, LLC, and Weight Loss Dojo, LLC, | |
| 458 MEDIA LLC, a limited liability company; | |
| ALPHA BRANDS, LLC, a limited liability company; | |
| BARREL ROLL, LLC, a limited liability company; | |
| BLU STELLA, LLC, a limited liability company; | |
| BRILLIANT SKIN LLC, a limited liability company; | |
| BSC MARKETING, LLC, a limited liability company; | |
| CHERRY HILL MARKETING, LLC, a limited liability company; | |
| CSA VENTURES, LLC, a limited liability company; | |

1   DIET CONCEPTS, LLC, a limited liability
        company;

2
    DISCOUNT PROVISIONS L.L.C., a limited
3       liability company;

4   DJD DISTRIBUTION, LLC, a limited liability
        company;
5

6   EXTAMAX, LLC, a limited liability company;

7   F12 MEDIA LLC, a limited liability company;

8   FLEX FORMULAS, LLC, a limited liability
        company;
9

10  GCB MARKETING LLC, a limited liability
        company;
11

12  HEALTH FORMULAS, LLC, a limited liability
        company;
13

14  HEALTH PRODUCTS DIRECT LLC, a limited
        liability company;

15  KMS MARKETING LLC, a limited liability
        company;
16

17  LONGHORN MARKETING, LLC, a limited
        liability company;
18

19  LUMINOUS SKIN LLC, a limited liability
        company;

20  MDCC, LLC, a limited liability company;

21
    MEN'S HEALTH FORMULAS, LLC, a limited
22      liability company;

23  METABOLIC LABS, LLC, a limited liability
        company;
24

25  METHOD DIRECT, LLC, a limited liability
        company;

METHOD FILMS, INC., a corporation;

MIRACLE MALE, LLC, a limited liability
company;

MORINGA MARKETING LLC, a limited liability
company;

NATURAL PRODUCTS DIRECT LLC, a limited
liability company;

NORTHBOUND MARKETING LLC, a limited
liability company;

NORTHERN HEALTH PRODUCTS LLC, a
limited liability company;

PURE AND NATURAL HEALTH PRODUCTS
LLC, a limited liability company;

PURE AND SIMPLE HEALTH PRODUCTS LLC,
a limited liability company;

PURE VITAMINS, LLC, a limited liability
company;

RADIANT SKIN LLC, a limited liability company;

SHIMMERING SKIN LLC, a limited liability
company;

SKINNY 7 LLC, a limited liability company;

TINDY FILMS LLC, a limited liability company;

WEIGHT LOSS DOJO, LLC, a limited liability
company;

WELLNESS LABS, LLC, a limited liability
company;

WELLNESS PRODUCTS, LLC, a limited liability
company;

1

2

VIP SAVINGS, LLC, a limited liability company;
    and

3

4

YACON MARKETING LLC, a limited liability
    company.

5

    Defendants.

6

7

        Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint

8

for Permanent Injunction and Other Equitable Relief, subsequently amended as Amended

9

Complaint for Permanent Injunction and Other Equitable Relief ("Complaint"), for a permanent

10

injunction and other equitable relief in this matter, pursuant to Sections 13(b) and 19 of the

11

Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b.  The Commission and

12

Defendants Jason Miller; Danelle Miller; 458 Media LLC; Alpha Brands, LLC; Barrel Roll,

13

LLC; Blu Stella, LLC; Brilliant Skin LLC; BSC Marketing, LLC; Cherry Hill Marketing, LLC;

14

CSA Ventures, LLC; Diet Concepts, LLC; Discount Provisions L.L.C.; DJD Distribution, LLC;

15

Extamax, LLC; F12 Media LLC; Flex Formulas, LLC; GCB Marketing LLC; Health Formulas,

16

LLC; Health Products Direct LLC; KMS Marketing LLC; Longhorn Marketing, LLC; Luminous

17

Skin LLC; MDCC, LLC; Men's Health Formulas, LLC; Metabolic Labs, LLC; Method Direct,

18

LLC; Method Films, Inc.; Miracle Male, LLC; Moringa Marketing LLC; Natural Products Direct

19

LLC; Northbound Marketing LLC; Northern Health Products LLC; Pure and Natural Health

20

Products LLC; Pure and Simple Health Products LLC; Pure Vitamins, LLC; Radiant Skin LLC;

21

Shimmering Skin LLC; Skinny 7 LLC; Tindy Films LLC; Weight Loss Dojo, LLC; Wellness

22

Labs, LLC; Wellness Products, LLC; VIP Savings, LLC; and Yacon Marketing LLC stipulate to

23

the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to

24

resolve all matters in dispute in this action between them.

25

        THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendants participated in deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) & 52; Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a); Section 4 of the Restore Online Shoppers' Confidence Act, 15 U.S.C. § 8403; Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b); and the FTC's Trade Regulation Rule entitled the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with the deceptive labeling, advertising, marketing, promotion, offering for sale, or sale of Dietary Supplements, skin creams, and Upsell products.

3. Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4. Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees. Defendants further waive and release any claims that they may have against the Commission, the Receiver, and their agents that relate to this action.

5. Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. "**Acquirer**" means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system (e.g., Visa, MasterCard, American Express, and Discover) to

authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

B.    "**Charge**" includes causing billing information to be submitted for payment, including against the consumer's credit card, debit card, bank account, phone bill, or other account, or otherwise attempting to collect money or other consideration.

C.    "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.    In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.    A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.    An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.    In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.    On a product label, the disclosure must be presented on the principal display panel.

6.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

7.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

8.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

9.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.      "**Corporate Defendants**" means 458 Media LLC; Alpha Brands, LLC; Barrel Roll, LLC; Blu Stella, LLC; Brilliant Skin LLC; BSC Marketing, LLC; Cherry Hill Marketing, LLC; CSA Ventures, LLC; Diet Concepts, LLC; Discount Provisions L.L.C.; DJD Distribution, LLC; Extamax, LLC; F12 Media LLC; Flex Formulas, LLC; GCB Marketing LLC; Health Formulas, LLC; Health Products Direct LLC; KMS Marketing LLC; Longhorn Marketing, LLC; Luminous Skin LLC; MDCC, LLC; Men's Health Formulas, LLC; Metabolic Labs, LLC; Method Direct, LLC; Method Films, Inc.; Miracle Male, LLC; Moringa Marketing LLC; Natural Products Direct LLC; Northbound Marketing LLC; Northern Health Products LLC; Pure and Natural Health Products LLC; Pure and Simple Health Products LLC; Pure Vitamins, LLC; Radiant Skin LLC; Shimmering Skin LLC; Skinny 7 LLC; Tindy Films LLC; Weight Loss Dojo, LLC; Wellness Labs, LLC; Wellness Products, LLC; VIP Savings, LLC; and Yacon Marketing LLC, and their successors, assigns, affiliates, and subsidiaries.

E.      "**Credit Card Factoring**" means:

1.      Presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a

transaction that is not the result of a credit card transaction between the cardholder and any of the Defendants;

2. Employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or

3. Obtaining access to the credit card system through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by the Merchant Account agreement or the applicable credit card system.

F. "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

G. "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

H. "**Dietary Supplement**" means:

1. any product labeled as a Dietary Supplement or otherwise represented as a Dietary Supplement; or

2. any pill, tablet, capsule, powder, soft gel, gel cap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional Food or as a sole item of a meal or the diet.

I. "**Drug**" means:  (a) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or

any supplement to any of them; (b) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (c) articles (other than Food) intended to affect the structure or any function of the body of humans or other animals; and (d) articles intended for use as a component of any article specified in (a), (b), or (c); but does not include devices or their components, parts, or accessories.

J.    "**Food**" means:  (a) any article used for Food or drink for humans or other animals; (b) chewing gum; and (c) any article used for components of any such article.

K.    "**Individual Defendants**" means Jason Miller and Danelle Miller.

L.    "**Merchant**" means a Person who is authorized under a written contract with an Acquirer to honor or accept credit cards, or to transmit or process for payment credit card Charges, for the purchase of goods or services.

M.    "**Merchant Account**" means an account with an Acquirer that authorizes and allows a Merchant to honor or accept credit cards, or to transmit or process for payment credit card Charges, for the purchase of goods or services or a charitable contribution.

N.    "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take an affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer or agreement.

O.    "**Outbound Telephone Call**" means a telephone call initiated by a Telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

P.    "**Person**" means a natural person, organization, or other legal entity, including a corporation, limited liability company, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

Q.   "**Receiver**" means Robb Evans & Associates LLC, the temporary receiver appointed in Section XIII of the Preliminary Injunction Order issued as to the Defendants [D.E. 149] and whose appointment is continued in Section XII of this Order and any deputy receivers that shall be named by the Receiver.

R.   "**Receivership Defendants**" means all of the Corporate Defendants.

S.   "**Receivership Estate**" means all assets of the Corporate Defendants, including but not limited to: (a) any assets of the Corporate Defendants currently in the possession of the Receiver, including but not limited to accounts identified in Appendix 6; (b) all the funds, property, premises, accounts, documents, mail, and all other assets of, or in the possession or under the control of the Corporate Defendants, wherever situated, the income and profits therefrom, all sums of money now or hereafter due or owing to the Corporate Defendants, and any other assets or property belonging or owed to the Corporate Defendants; (c) any assets of the Corporate Defendants held in asset protection trusts; (d) any reserve funds or other accounts associated with any payments processed on behalf of any Corporate Defendant, including but not limited to, such reserve funds held by a payment processor, credit card processor, or bank, and including but not limited to accounts identified in Appendices 1 through 3 and Appendices 7 through 12; and (e) all proceeds from the sale of such assets, except those assets the sale of which the Receiver determines will not add appreciably to the value of the estate.

T.   "**Reliably Reported**," for a human clinical test or study ("test"), means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

U.   "**Telemarketer**" means any Person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor.

V.      "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the TSR.

W.      "**Upsell**" means a solicitation for the purchase of any good or service following an initial transaction during a single telephone call.

X.      "**Weight Loss Product**" means any product, service, or program manufactured, labeled, packaged, distributed, advertised, promoted, offered for sale, or sold for the express or implied purpose of causing weight loss, maintaining weight loss, maintaining weight, or otherwise affecting weight gain or loss, whether individually or in any combination.  For the purposes of this Order only, "Weight Loss Product" does not mean or include an exercise program or exercise equipment.

## ORDER

### I.

### BAN ON NEGATIVE OPTION SALES

**IT IS ORDERED** that Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale any good or service with a Negative Option Feature, whether directly or through an intermediary, including by consulting, planning, participating, facilitating or advising.

### II.

### BAN ON SALES OF WEIGHT LOSS PRODUCTS

**IT IS FURTHER ORDERED** that Defendants are permanently restrained and enjoined from manufacturing, labeling, packaging, advertising, marketing, promotion, offering for sale, sale, or distribution, or assisting in the manufacturing, labeling, packaging, advertising, marketing, promotion, offering for sale, sale, or distribution of any Weight Loss Product.

# III.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service are permanently restrained and enjoined from:

A.      Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose in a Clear and Conspicuous manner, expressly or by implication, all material terms and conditions of any offer, including:

      1.      the total cost or price of the good or service;

      2.      the amount, timing, and manner of all fees, Charges or other amounts that a consumer will be Charged or billed, including but not limited to the date of the Charge and whether it will be a credit card or checking account Charge; and

      3.      the mechanism for consumers to stop a Charge.

B.      Before a customer consents to pay for such good or service, failing to disclose, or assisting others in failing to disclose in a Clear and Conspicuous manner, expressly or by implication, all material terms and conditions of any refund and cancellation policy, including:

      1.      the specific steps and means by which such requests must be submitted;

      2.      the customer service telephone number or numbers that a customer must call to cancel and return goods or services;

      3.      the email address, web address, or street address to which such requests must be directed;

      4.      any mechanism that customers must use to return any goods or services, including any requirement for specific tracking methods or delivery confirmation for a package;

5.     if there is any policy of not making refunds or cancellations, including any requirement that a product will not be accepted for return or refund unless it is unopened and in re-sellable condition, a statement regarding this policy; and

6.     the duration of Defendants' refund and cancellation policy, including the date that it begins to run.

C.     Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any fact material to consumers concerning any good or service, such as:

1.     that a good or service is free, a bonus, a gift, a trial, without cost, or without obligation;

2.     that consumers can obtain a good or service for a minimal processing, service, or administrative fee with no further obligation;

3.     that a purchase is "risk free," or offered with a satisfaction guarantee, or with a money-back guarantee;

4.     the total cost for any good or service;

5.     the timing or manner of any Charge or bill, including but not limited to the date of the Charge and whether it will be a credit card or a checking account Charge;

6.     any material restrictions, limitations, or conditions to purchase, receive, or use any good or service;

7.     that a transaction has been authorized by a consumer;

8.     any material aspect of the performance, efficacy, nature, or central characteristics of a good or service; or

9.     any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for any good or service.

**IV.**

**PROHIBITED REPRESENTATIONS:  OTHER HEALTH-RELATED CLAIMS**

**IT IS FURTHER ORDERED** that Defendants, and Defendants' officers, agents, and employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, packaging, advertising, marketing, promotion, offering for sale, sale, or distribution of any Food, Drug, or Dietary Supplement, are permanently restrained and enjoined from making, or assisting others in making, directly or by implication, any representation, other than representations covered under Sections I and II of this Order, about the health benefits, performance, or efficacy of such product, unless the representation is non-misleading, and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates ("qualified experts"), when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section of the Order, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by qualified experts; (2) that are generally accepted by qualified experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Food, Dietary Supplement, or Drug, when qualified experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section of this Order entitled Preservation of

Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.

## V.

## PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including:

A.      All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other Person not employed by the research entity;

B.      All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.      Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.      All documents referring or relating to any statistical analysis of any test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.      All documents referring or relating to the sponsorship of the test, including all communications and contracts between any sponsor and the test's researchers.

***Provided, however,*** the preceding preservation requirement does not apply to a Reliably Reported test, unless the test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other Person or entity in active concert or participation with any Defendant; (4) any Person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to Corporate Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## VI.

### PROHIBITIONS AGAINST DECEPTIVE AND ABUSIVE TELEMARKETING PRACTICES

**IT IS FURTHER ORDERED** that Defendants and Defendants' officers, agents, and employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with Telemarketing, are hereby permanently restrained and enjoined from engaging in, causing others to engage in, or assisting other Persons to engage in, any of the following practices:

A.      initiating, or assisting others in initiating, any Outbound Telephone Call to a Person when that Person has previously stated that he or she does not wish to receive an Outbound Telephone Call made by or on behalf of Defendants; or

B.      violating, or assisting others in violating, the TSR, 16 C.F.R. Part 310, a copy of which is attached as **Attachment A**.

### VII.

### PROHIBITIONS RELATED TO MERCHANT ACCOUNTS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, and employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with a Merchant Account, are permanently restrained and enjoined from Credit Card Factoring.

### VIII.

### MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of One Hundred Five Million Dollars ($105,000,000) is entered in favor of the Commission and against the Individual Defendants and Corporate Defendants, jointly and severally, as equitable monetary relief.  Upon complete payment and transfer to the Commission of all assets listed in Subsections VIII.B. and VIII.C. below, the remainder of the judgment is suspended, subject to Subsection VIII.D-H, directly below.

B.      In partial satisfaction of the monetary judgment set forth above, Defendants hereby relinquish any dominion, and all legal and equitable right, title, control, or interest in the assets listed below effective upon entry of this Order, and the following transfers of assets shall occur within seven (7) days of entry of this Order:

        1.      Charles Schwab & Co., Inc. ("Charles Schwab") shall liquidate all assets held in the name of or for the benefit of any of the Individual Defendants, including but not limited to the Charles Schwab accounts identified in Appendix 4 to this Order, and then transfer to the Commission the net proceeds of the liquidated accounts;

2.     Comerica Bank and/or Comerica Bank & Trust National Association ("Comerica") shall transfer to the Commission all assets held in the name of or for the benefit of any of the Individual Defendants, including but not limited to the Comerica accounts identified in Appendix 5 to this Order;

3.     John Hancock FREEDOM 529 and/or its distributor, John Hancock Distributors LLC, which is an affiliate of John Hancock Funds LLC, the distributor of John Hancock Investments ("John Hancock") shall liquidate all assets held in the John Hancock accounts for Danelle Miller 529 College Savings FBO [REDACTED] and Danelle Miller 529 College Savings FBO [REDACTED], including but not limited to John Hancock accounts ending in *2024 and *2028, and then transfer to the Commission the net proceeds of the liquidated accounts;

4.     Pershing LLC ("Pershing") shall liquidate all assets held in the name of or for the benefit of any of the Individual Defendants, including but not limited to the Pershing account ending in *3517 for SEP FBO Jason W. Miller, and then transfer to the Commission the net proceeds of the liquidated accounts;

5.     Puerto Rico Sotheby's International Realty ("Sotheby's") shall transfer to the Commission all assets held in the name of or for the benefit of any of the Defendants, including but not limited to the trust account ending in *8804;

6.     UBS Financial Services, Inc. ("UBS") shall liquidate all assets held in the name of or for the benefit of any of the Individual Defendants, including but not limited to the UBS accounts identified in Appendix 13 to this Order, and then transfer to the Commission the net proceeds of the liquidated accounts; and

7.     Defendants Jason Miller and Danelle Miller shall liquidate all Bitcoin assets held in any www.coinbase.com accounts in the name of or for the benefit of any of the

Individual Defendants, and then transfer to the Commission the net proceeds of the liquidated accounts.

C.   Effective upon entry of this Order, Defendants hereby relinquish any dominion, and all legal and equitable right, title, control, or interest, in the following assets:

1.   All funds held, controlled, or maintained by BankCard USA Merchant Services ("BankCard USA") since the inception of the Temporary Restraining Order [D.E. 12] associated with credit card or debit card Charges made on behalf of any Corporate Defendants, including all funds in accounts held, controlled, maintained, or opened by BankCard USA, including reserve funds, and including the accounts identified in Appendix 1 to this Order;

2.   All funds held, controlled, or maintained by CashFlows since the inception of the Temporary Restraining Order [D.E. 12] associated with credit card or debit card Charges made on behalf of any Corporate Defendants, including all funds in accounts held, controlled, maintained, or opened by CashFlows, including reserve funds, and including the accounts identified in Appendix 2 to this Order;

3.   All funds held, controlled, or maintained by Chain Commerce Inc. ("Chain") since the inception of the Temporary Restraining Order [D.E. 12] associated with credit card or debit card Charges made on behalf of any Corporate Defendants, including all funds in accounts held, controlled, maintained, or opened by Chain, including reserve funds, and including the accounts identified in Appendix 3 to this Order;

4.   All funds in any accounts held by Comerica, in the name of or for the benefit of any of the Corporate Defendants, including but not limited to the Comerica accounts identified in Appendix 6 to this Order;

5.      All funds held, controlled, or maintained by Cynergy Data LLC ("Cynergy")
        since the inception of the Temporary Restraining Order [D.E. 12] associated with
        credit card or debit card Charges made on behalf of any Corporate Defendants,
        including all funds in accounts held, controlled, maintained, or opened by
        Cynergy, including reserve funds, and including but not limited to the accounts
        identified in Appendix 7 to this Order;

6.      All funds held, controlled, or maintained by Electronic Merchant Systems, Inc.
        ("EMS") since the inception of the Temporary Restraining Order [D.E. 12]
        associated with credit card or debit card Charges made on behalf of any Corporate
        Defendants, including all funds in accounts held, controlled, maintained, or
        opened by EMS, including reserve funds, and including but not limited to the
        accounts identified in Appendix 8 to this Order;

7.      All funds held, controlled, or maintained by EVO Payments International LLC
        ("EVO") since the inception of the Temporary Restraining Order [D.E. 12]
        associated with credit card or debit card Charges made on behalf of any Corporate
        Defendants, including all funds in accounts held, controlled, maintained, or
        opened by EVO, including reserve funds, and including but not limited to the
        accounts identified in Appendix 9 to this Order;

8.      All funds held, controlled, or maintained by Humboldt Merchant Services
        ("Humboldt") since the inception of the Temporary Restraining Order [D.E. 12]
        associated with credit card or debit card Charges made on behalf of any Corporate
        Defendants, including all funds in accounts held, controlled, maintained, or
        opened by Humboldt, including reserve funds, and including but not limited to the
        accounts identified in Appendix 10 to this Order;

9.      All funds held, controlled, or maintained by Merrick Bank ("Merrick Bank") since the inception of the Temporary Restraining Order [D.E. 12] associated with credit card or debit card Charges made on behalf of any Corporate Defendants, including all funds in accounts held, controlled, maintained, or opened by Merrick Bank, including reserve funds, and including but not limited to the account ending in *7526 for Defendant Wellness Product LLC, the account ending in *4153 for Lifevtamins, the account ending in *4154 for Menshealth, the account ending in *4155 for Spnutri, and the account ending in *4156 for Purevit;

10.     All funds held, controlled, or maintained by Meritus Payment Solutions, now known as Paysafe Group, a subsidiary of Optimal Payments ("Meritus"), since the inception of the Temporary Restraining Order [D.E. 12] associated with credit card or debit card Charges made on behalf of any Corporate Defendants, including all funds in accounts held, controlled, maintained, or opened by Meritus, including reserve funds, and including but not limited to the accounts identified in Appendix 11 to this Order;

11.     All funds held, controlled, or maintained by National Merchant Center ("NMC") since the inception of the Temporary Restraining Order [D.E. 12] associated with credit card or debit card Charges made on behalf of any Corporate Defendants, including all funds in accounts held, controlled, maintained, or opened by NMC, including reserve funds, and including but not limited to the account ending in *0001 for Defendant CSA Ventures LLC;

12.     All funds held, controlled, or maintained by Orion Payment Systems ("Orion") since the inception of the Temporary Restraining Order [D.E. 12] associated with credit card or debit card Charges made on behalf of any Corporate Defendants, including all funds in accounts held, controlled, maintained, or opened by Orion,

1   including reserve funds, and including but not limited to the accounts identified in

2   Appendix 12 to this Order;

3   13.   All funds held, controlled, or maintained by Pace Payment Systems, Inc. ("Pace")

4         since the inception of the Temporary Restraining Order [D.E. 12] associated with

5         credit card or debit card Charges made on behalf of any Corporate Defendants,

6         including all funds in accounts held, controlled, maintained, or opened by Pace,

7         including reserve funds, and including but not limited to the account ending in

8         *7881 for Defendant Diet Concepts LLC;

9   14.   All funds held, controlled, or maintained by Payment World ("Payment World")

10        since the inception of the Temporary Restraining Order [D.E. 12] associated with

11        credit card or debit card Charges made on behalf of any Corporate Defendants,

12        including all funds in accounts held, controlled, maintained, or opened by

13        Payment World, including reserve funds, and including but not limited to the

14        accounts ending in *8001, *9001, and *0001 for Defendant BSC Marketing LLC,

15        and the accounts ending in *6001, *95001, and *85001 for Defendant Pure

16        Vitamin LLC;

17  15.   All funds held, controlled, or maintained by Select Bankcard since the inception

18        of the Temporary Restraining Order [D.E. 12] associated with credit card or debit

19        card Charges made on behalf of any Corporate Defendants, including all funds in

20        accounts held, controlled, maintained, or opened by Select Bankcard, including

21        reserve funds, and including but not limited to the account ending in *0164 for

22        Defendant Diet Concepts LLC;

23  D.    Notwithstanding the foregoing Subsection VIII.C., it is expressly agreed and understood

24  that all funds and accounts described in Subsection VIII.C. constitute a part of the Receivership

25

Estate, and the Receiver is expressly authorized and directed to take exclusive custody, control and possession of all such funds and accounts pursuant to Section XII of this Order.

E.      Individual Defendants shall execute, or cause to be executed, within three (3) days of written notice of this Order all documents necessary to effectuate the liquidation, where appropriate, and the transfer of the assets identified in Subsections VIII.B. and VIII.C. above.

F.      The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively, "financial representations" ) submitted to the Commission, namely:

     1.      the Financial Statement of Individual Defendant Jason Miller signed on October 21, 2014 and submitted on October 23, 2014, including the attachments submitted on October 21, 2014, October 22, 2014, and October 23, 2014;

     2.      the Financial Statement of Individual Defendant Jason Miller signed on July 9, 2015, including the attachments;

     3.      the Financial Statement of Individual Defendant Jason Miller signed on October 8, 2015, including the attachments;

     4.      the Declaration of Individual Defendant Jason Miller signed on October 16, 2015;

     5.      the Financial Statement of Individual Defendant Danelle Miller signed on October 21, 2014 and submitted on October 23, 2014, including the attachments submitted on October 21, 2014, October 22, 2014, and October 23, 2014;

     6.      the Financial Statement of Individual Defendant Danelle Miller signed on July 9, 2015, including the attachments;

     7.      the Financial Statement of Individual Defendant Danelle Miller signed on October 8, 2015, including the attachments;

8.      the Declaration of Individual Defendant Danelle Miller signed on October 16, 2015;

9.      the Financial Statement of Corporate Defendant 458 Media LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

10.     the Financial Statement of Corporate Defendant Alpha Brands, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

11.     the Financial Statement of Corporate Defendant Barrel Roll, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on February 12, 2016, including the attachments;

12.     the Financial Statement of Corporate Defendant Blu Stella, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

13.     the Financial Statement of Corporate Defendant Brilliant Skin LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

14.     the Financial Statement of Corporate Defendant BSC Marketing, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on July 9, 2015, including the attachments;

15.     the Financial Statement of Corporate Defendant Cherry Hill Marketing, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

16.     the Financial Statement of Corporate Defendant CSA Ventures, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

17.     the Financial Statement of Corporate Defendant Diet Concepts, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on July 9, 2015, including the attachments;

18.     the Financial Statement of Corporate Defendant Discount Provisions L.L.C., signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

19.     the Financial Statement of Corporate Defendant DJD Distribution, LLC, signed by Jason Miller, Manager, and initialed by Jason Miller and Danelle Miller, on October 21, 2014 and submitted on October 30, 2014, including the attachments;

20.     the Financial Statement of Corporate Defendant Extamax, LLC, signed and initialed by Jason Miller, Managing Member, on June 22, 2015 and submitted on February 12, 2016, including the attachments;

21.     the Financial Statement of Corporate Defendant F12 Media LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

22.     the Financial Statement of Corporate Defendant Flex Formulas, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

23.     the Financial Statement of Corporate Defendant GCB Marketing LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

24. the Financial Statement of Corporate Defendant Health Formulas, LLC, signed by Jason Miller, Manager, and initialed by Jason Miller and Danelle Miller, on October 21, 2014 and submitted on October 30, 2014, including the attachments;

25. the Financial Statement of Corporate Defendant Health Products Direct LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on July 9, 2015, including the attachments;

26. the Financial Statement of Corporate Defendant KMS Marketing LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

27. the Financial Statement of Corporate Defendant Longhorn Marketing, LLC, signed by Jason Miller, Manager, and initialed by Jason Miller and Danelle Miller, on October 21, 2014 and submitted on October 30, 2014, including the attachments;

28. the Financial Statement of Corporate Defendant Luminous Skin LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

29. the Financial Statement of Corporate Defendant MDCC, LLC, signed by Jason Miller, Manager, and initialed by Jason Miller and Danelle Miller, on October 21, 2014 and submitted on October 30, 2014, including the attachments;

30. the Financial Statement of Corporate Defendant Men's Health Formulas, LLC, signed and initialed by Jason Miller, Managing Member, on June 22, 2015 and submitted June 22, 2015, including the attachments;

31. the Financial Statement of Corporate Defendant Metabolic Labs, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

32.   the Financial Statement of Corporate Defendant Method Direct, LLC, signed by Jason Miller, Manager, and initialed by Jason Miller and Danelle Miller, on October 21, 2014 and submitted on October 30, 2014, including the attachments;

33.   the Financial Statement of Corporate Defendant Method Films, Inc., signed and initialed by Jason Miller, Secretary, on April 15, 2015 and submitted on April 22, 2015, including the attachments;

34.   the Financial Statement of Corporate Defendant Miracle Male, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 submitted on April 22, 2015, including the attachments;

35.   the Financial Statement of Corporate Defendant Moringa Marketing LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

36.   the Financial Statement of Corporate Defendant Natural Products Direct LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

37.   the Financial Statement of Corporate Defendant Northbound Marketing LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

38.   the Financial Statement of Corporate Defendant Northern Health Products LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

39.   the Financial Statement of Corporate Defendant Pure and Natural Health Products LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

40. the Financial Statement of Corporate Defendant Pure and Simple Health Products LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

41. the Financial Statement of Corporate Defendant Pure Vitamins, LLC, signed by Jason Miller, Manager, and initialed by Jason Miller and Danelle Miller, on October 21, 2014 and submitted on October 30, 2014, including the attachments;

42. the Financial Statement of Corporate Defendant Radiant Skin LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

43. the Financial Statement of Corporate Defendant Shimmering Skin LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on July 9, 2015, including the attachments;

44. the Financial Statement of Corporate Defendant Skinny 7 LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

45. the Financial Statement of Corporate Defendant Tindy Films LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

46. the Financial Statement of Corporate Defendant VIP Savings, LLC, signed by Jason Miller, Manager, and initialed by Jason Miller and Danelle Miller, on October 21, 2014 and submitted on October 30, 2014, including the attachments;

47. the Financial Statement of Corporate Defendant Weight Loss Dojo, LLC, signed by Jason Miller, Manager, and initialed by Jason Miller and Danelle Miller, on October 21, 2014 and submitted on October 30, 2014, including the attachments;

48. the Financial Statement of Corporate Defendant Wellness Labs, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

49. the Financial Statement of Corporate Defendant Wellness Products, LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

50. the Financial Statement of Corporate Defendant Yacon Marketing LLC, signed and initialed by Jason Miller, Managing Member, on April 4, 2015 and submitted on April 22, 2015, including the attachments;

51. the additional documentation submitted by letter from Defendants' counsel Steven Eichorn to Commission counsel dated November 3, 2014, in support of Defendants' financial disclosures;

52. the additional documentation submitted by email from Defendants' counsel Sarah Koch to Commission counsel dated May 1, 2015, concerning the sale of a car owned by the Individual Defendants;

53. the additional documentation submitted by email from Defendants' counsel Rachel Hirsch to Commission counsel dated May 4, 2015, concerning the sale of a car owned by the Individual Defendants;

54. the additional documentation submitted by email from Defendants' counsel Rachel Hirsch to Commission counsel dated June 22, 2015, concerning the Individual Defendants' personal assets and liabilities;

55. the additional documentation submitted by email from Defendants' counsel William Rothbard to Commission counsel dated September 2, 2015, concerning the Corporate Defendants' assets and the Individual Defendants' liabilities;

56.     the additional documentation submitted by email from Defendants' counsel William Rothbard to Commission counsel dated December 4, 2015, concerning the Individual Defendants' house and IRAs;

57.     the additional documentation submitted by email from Defendants' counsel William Rothbard to Commission counsel dated December 7, 2015, concerning the Individual Defendants' house;

58.     the additional documentation submitted by email from Defendants' counsel William Rothbard to Commission counsel dated December 17, 2015, concerning the Individual Defendants' house and IRAs;

59.     the additional documentation submitted by email from Defendants' counsel William Rothbard to Commission counsel dated December 21, 2015, concerning the Individual Defendants' tax liability; and

60.     the additional documentation submitted by email from Defendants' counsel William Rothbard to Commission counsel dated December 28, 2015, concerning the Individual Defendants' tax liability.

G.     The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Commission, the Court finds that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

H.     If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection VIII.A. above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

# IX.

## ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order, including but not limited to the assets identified in Subsections VIII.B. and VIII.C. above, and may not seek the return of any assets.

B.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all intellectual property owned by the Corporate Defendants;

C.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all successors, assigns, affiliates, and subsidiaries of the Corporate Defendants, including all entities (domestic or foreign) holding payment processing accounts used by Defendants and their successors, assigns, affiliates, and subsidiaries, and their assets, and may not seek the return of any interest in those corporate entities or their assets.  Further, Defendants will not raise any objection to the transfer of any assets held by said entities, including any funds held in payment processing reserve accounts.

D.      Notwithstanding the foregoing, it is expressly agreed and understood that all assets held in the name of or for the benefit of any of the Corporate Defendants and all of the funds, assets, and intellectual property identified and set forth in Subsections VIII.C., IX.B., and IX.C, constitute a part of the Receivership Estate, and the Receiver is expressly authorized and directed to take exclusive custody, control and possession of all such funds, assets, and intellectual property pursuant to Section XII of this Order.

E.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

F.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

G.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

H.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

I.      The existing asset freeze of Defendants' assets set forth in the Preliminary Judgment Order as to Defendants [D.E.149], entered by this court on May 6, 2015, is modified to permit the payments and transfers identified in the Monetary Judgment Section (Section VIII) of this Order.  Upon completion of those payments and transfers, the asset freeze is dissolved as to the Individual Defendants.

# X.

## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.      failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  Defendants represent that they have provided this redress information to the Commission.  If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.      disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the sale of Dietary Supplements, skin creams, or Upsell products; and

C.      failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

**Provided, however**, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

# XI.

## COOPERATION

**IT IS FURTHER ORDERED** that the Corporate Defendants and Individual Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Such Defendants must provide truthful and complete information, evidence, and testimony.  Such Individual Defendants must appear and such Corporate Defendants must cause Defendants' officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 10 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.  Such Defendants also must fully cooperate with representatives of the Receiver in this case.

# XII.

## RECEIVERSHIP

**IT IS FURTHER ORDERED** that Robb Evans & Associates LLC is hereby appointed permanent Receiver for the Receivership Defendants for the purpose of taking the necessary steps to wind down the businesses of the Receivership Defendants, liquidate assets, and pay any net proceeds to the Commission to satisfy the monetary judgment in this Order.  In carrying out these duties, the Receiver shall be the agent of this Court, shall be accountable directly to this Court, and is authorized and directed to:

A.     Take any and all steps that the Receiver concludes are appropriate to wind down the affairs of the Receivership Defendants.

B.     Continue to exercise full control over the Receivership Defendants and continue to collect, marshal, and take custody, control, and possession of all the funds, property, premises, accounts, documents, mail, and other assets of, or in the possession or under the control of the

Receivership Defendants, wherever situated, the income and profits therefrom, and all sums of money now or hereafter due or owing to the Receivership Defendants.

C. Continue to have full control over the management and personnel of the Receivership Defendants.

D. Take all steps necessary or advisable, including issuing subpoenas, to locate and liquidate all other assets of the Receivership Defendants, cancel the Receivership Defendants' contracts, collect on amounts owed to the Receivership Defendants, and take such other steps as may be necessary to wind-down the Receivership Defendants efficiently.

E. To the extent not already completed, the Receiver shall as soon as practicable after the entry of this Order, take exclusive custody, control, and possession of all funds identified in Subsection VIII.C.

F. The Receiver shall give reasonable notice to the Commission of any settlements or compromises by the Receiver concerning the Receivership Estate, before the settlement or compromise is consummated. Within 20 days of this notice, the Commission shall have the opportunity to object to any such settlement, by filing a motion with the Court.

G. Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of the temporary restraining order in this action, except payments that the Receiver deems necessary or advisable to ensure assets of the Receivership Defendants are not lost, stolen, or dissipated.

H. Institute actions or proceedings in state, federal, or foreign courts as the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers.

I.      Defend any or all actions or proceedings instituted against the Receivership Defendants, as the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants.

J.      Continue to maintain accurate records of all receipts and expenditures incurred as the Receiver.

K.      Perform all acts necessary or advisable to complete an accurate accounting of assets of the Receivership Estate, and prevent unauthorized transfer, withdrawal, or misapplication of said assets.

L.      Continue to be entitled to reasonable compensation for the performance of the Receiver's duties pursuant to this Order, including duties performed by the Receiver's agents, including accountants and lawyers, and for the cost of actual out-of-pocket expenses incurred by them, from the assets of the Receivership Defendants, at the hourly rate previously agreed to by the Receiver and used as the bases for prior fee applications approved by the Court.

## XIII.

## RECEIVER'S FINAL REPORT AND DISBURSEMENT

**IT IS FURTHER ORDERED** that:

A.      No later than 120 days from the date of the entry of this Order, the Receiver shall file and serve on the parties a report (the "Final Report") to the Court that details the steps taken to dissolve the Receivership Estate.  The Final Report must include an accounting of the Receivership Estate's finances and total assets and a description of what other actions, if any, must be taken to wind down the Receivership.

B.      The Receiver shall mail copies of the Final Report to all known creditors of the Receivership Defendants with a notice stating that any objections to paying any assets of the Receivership Defendants to satisfy the Receiver's costs and expenses and the monetary judgment

set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within thirty (30) days of the mailing of the Final Report.

C.      No later than fifteen (15) days after submission of the Final Report, the Receiver shall file an application for payment of compensation and expenses associated with his performance of his duties as Receiver.

D.      The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing that the Receiver:

  1.      Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the Receiver's personnel authorized by Section XII of this Order or other orders of this Court and the actual out-of-pocket costs incurred by the Receiver in carrying out his duties;

  2.      Pay all remaining funds to the Commission or its designated agent to reduce the monetary judgment in Section VIII.

E.      With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a supplemental application.  If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve funds after the payment of fees and expenses approved by the Court in response to such a supplemental application, all funds in the reserve funds shall be immediately paid to the Commission or its designated agent.

F.      Any and all uncollected judgments obtained for the benefit of the Receivership Defendants shall be assigned to the Commission for further collection efforts.

## XIV.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting (Section XV).  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XV.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Individual Defendant and each Corporate Defendant must submit a compliance report, sworn under penalty of perjury:

      1.      Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business,

including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2. Additionally, each Individual Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 10 years after entry of this Order, each Individual Defendant and each Corporate Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2. Additionally, each Individual Defendant must report any change in:  (a) name, including aliases or fictitious names, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs

services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to:  Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  FTC v. Jason Miller, X150015.

## XVI.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.  Specifically, Corporate Defendants and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each Person providing services, whether as an employee or otherwise, that Person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests concerning the subject matter of the Order, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      A copy of each unique advertisement or other marketing material, and each contract with suppliers, payment processors, advertisers or advertising agencies, affiliate marketing brokers, and consumer list brokers.

## XVII.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Commission to interview

any employee or other Person affiliated with any Defendant who has agreed to such an interview. The Person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XVIII.

## RETENTION OF JURISDICTION

~~IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.~~

The Court has reviewed the stipulated preliminary injunction and finds no evidence that it is unfair, inadequate, or unreasonable. Therefore, IT IS ORDERED that [201] Stipulation for Permanent Injunction is GRANTED.

Dated: February 22, 2017

_____

**THE HONORABLE RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

**SO STIPULATED AND AGREED:**

**FOR THE PLAINTIFF FEDERAL TRADE COMMISSION:**

Danielle Estrada, Attorney                                  Date: 4-25-16
Federal Trade Commission
600 Pennsylvania Ave, NW CC-8528
Washington, DC 20580
Tel. (202) 326-2630
Fax (202) 326-3395
destrada@ftc.gov

**FOR DEFENDANTS:**

William I. Rothbard                                         Date: 2-25-16
Law Offices of William I. Rothbard
1217 Yale Street, Suite #104
Santa Monica, California  90404
Tel. (310) 453-8713
Fax (310) 453-8715
Bill@RothbardLaw.com

*Counsel for Defendants 458 Media LLC; Alpha Brands, LLC; Barrel Roll, LLC; Blu Stella, LLC; Brilliant Skin LLC; BSC Marketing, LLC; Cherry Hill Marketing, LLC; CSA Ventures, LLC; Diet Concepts, LLC; Discount Provisions L.L.C.; DJD Distribution, LLC; Extamax, LLC; F12 Media LLC; Flex Formulas, LLC; GCB Marketing LLC; Health Formulas, LLC; Health Products Direct LLC; KMS Marketing LLC; Longhorn Marketing, LLC; Luminous Skin LLC; MDCC, LLC; Men's Health Formulas, LLC; Metabolic Labs, LLC; Method Direct, LLC; Method Films, Inc.; Miracle Male, LLC; Moringa Marketing LLC; Natural Products Direct LLC; Northbound Marketing LLC; Northern Health Products LLC; Pure and Natural Health Products LLC; Pure and Simple Health Products LLC; Pure Vitamins, LLC; Radiant Skin LLC; Shimmering Skin LLC; Skinny 7 LLC; Tindy Films LLC; Weight Loss Dojo, LLC; Wellness Labs, LLC;*

1  *Wellness Products, LLC; VIP Savings, LLC; and Yacon*
   *Marketing LLC, Jason Miller, and Danelle Miller*

2

3  **DEFENDANTS: 458 Media LLC; Alpha Brands, LLC; Barrel Roll, LLC; Blu Stella,**
   **LLC; Brilliant Skin LLC; BSC Marketing, LLC; Cherry Hill Marketing, LLC; CSA**
4  **Ventures, LLC; Diet Concepts, LLC; Discount Provisions L.L.C.; DJD Distribution, LLC;**
   **Extamax, LLC; F12 Media LLC; Flex Formulas, LLC; GCB Marketing LLC; Health**
5  **Formulas, LLC; Health Products Direct LLC; KMS Marketing LLC; Longhorn**
6  **Marketing, LLC; Luminous Skin LLC; MDCC, LLC; Men's Health Formulas, LLC;**
   **Metabolic Labs, LLC; Method Direct, LLC; Method Films, Inc.; Miracle Male, LLC;**
7  **Moringa Marketing LLC; Natural Products Direct LLC; Northbound Marketing LLC;**
   **Northern Health Products LLC; Pure and Natural Health Products LLC; Pure and Simple**
8  **Health Products LLC; Pure Vitamins, LLC; Radiant Skin LLC; Shimmering Skin LLC;**
9  **Skinny 7 LLC; Tindy Films LLC; Weight Loss Dojo, LLC; Wellness Labs, LLC; Wellness**
   **Products, LLC; VIP Savings, LLC; and Yacon Marketing LLC, Jason Miller, and Danelle**
10 **Miller**

11

12 _____          Date:  2/26/16
   Jason Miller, Individually and as an officer of 458 Media
13 LLC; Alpha Brands, LLC; Barrel Roll, LLC; Blu Stella,
   LLC; Brilliant Skin LLC; BSC Marketing, LLC; Cherry
14 Hill Marketing, LLC; CSA Ventures, LLC; Diet
   Concepts, LLC; Discount Provisions L.L.C.; DJD
15 Distribution, LLC; Extamax, LLC; F12 Media LLC; Flex
   Formulas, LLC; GCB Marketing LLC; Health Formulas,
16 LLC; Health Products Direct LLC; KMS Marketing LLC;
   Longhorn Marketing, LLC; Luminous Skin LLC;
17 MDCC, LLC; Men's Health Formulas, LLC; Metabolic
18 Labs, LLC; Method Direct, LLC; Method Films, Inc.;
   Miracle Male, LLC; Moringa Marketing LLC; Natural
19 Products Direct LLC; Northbound Marketing LLC;
20 Northern Health Products LLC; Pure and Natural Health
   Products LLC; Pure and Simple Health Products LLC;
21 Pure Vitamins, LLC; Radiant Skin LLC; Shimmering
   Skin LLC; Skinny 7 LLC; Tindy Films LLC; Weight
22 Loss Dojo, LLC; Wellness Labs, LLC; Wellness
   Products, LLC; VIP Savings, LLC; and Yacon Marketing
23 LLC

24

25

Date: 2·26·2016

Darielle Miller, Individually and as an officer of 458
Media LLC; Alpha Brands, LLC; Barrel Roll, LLC; Blu
Stella, LLC; Brilliant Skin LLC; BSC Marketing, LLC;
Cherry Hill Marketing, LLC; CSA Ventures, LLC; Diet
Concepts, LLC; Discount Provisions L.L.C.; DJD
Distribution, LLC; Extamax, LLC; F12 Media LLC; Flex
Formulas, LLC; GCB Marketing LLC; Health Formulas,
LLC; Health Products Direct LLC; KMS Marketing LLC;
Longhorn Marketing, LLC; Luminous Skin LLC;
MDCC, LLC; Men's Health Formulas, LLC; Metabolic
Labs, LLC; Method Direct, LLC; Method Films, Inc.;
Miracle Male, LLC; Moringa Marketing LLC; Natural
Products Direct LLC; Northbound Marketing LLC;
Northern Health Products LLC; Pure and Natural Health
Products LLC; Pure and Simple Health Products LLC;
Pure Vitamins, LLC; Radiant Skin LLC; Shimmering
Skin LLC; Skinny 7 LLC; Tindy Films LLC; Weight
Loss Dojo, LLC; Wellness Labs, LLC; Wellness
Products, LLC; VIP Savings, LLC; and Yacon Marketing
LLC

45 of 45

Pt. 309, App. A                                    16 CFR Ch. I (1–1–14 Edition)

APPENDIX A TO PART 309—FIGURES FOR PART 309



Figure 1

Figure 2

Figure 3

[60 FR 26955, May 19, 1995, as amended at 69 FR 55339, Sept. 14, 2004; 78 FR 23835, Apr. 23, 2013]

## PART 310—TELEMARKETING SALES RULE 16 CFR PART 310

Sec.
310.1  Scope of regulations in this part.
310.2  Definitions.
310.3  Deceptive telemarketing acts or practices.
310.4  Abusive telemarketing acts or practices.
310.5  Recordkeeping requirements.
310.6  Exemptions.
310.7  Actions by states and private persons.
310.8  Fee for access to the National Do Not Call Registry.
310.9  Severability.

AUTHORITY: 15 U.S.C. 6101–6108.

SOURCE: 75 FR 48516, Aug. 10, 2010, unless otherwise noted.

### § 310.1  Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101–6108, as amended.

### § 310.2  Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

380

**Federal Trade Commission**                                    **§ 310.2**

(b) *Attorney General* means the chief legal officer of a state.

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Charitable contribution* means any donation or gift of money or any other thing of value.

(g) *Commission* means the Federal Trade Commission.

(h) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(i) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(j) *Credit card sales draft* means any record or evidence of a credit card transaction.

(k) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(l) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(m) *Debt relief service* means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

(n) *Donor* means any person solicited to make a charitable contribution.

(o) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(p) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(q) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(r) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(s) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(t) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(u) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

381

(v) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(w) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(x) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(y) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(z) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(aa) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(bb) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(cc) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(dd) *Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog

which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(ee) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

**§ 310.3  Deceptive telemarketing acts or practices.**

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer consents to pay [659] for goods or services offered,

---

[659] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment. In

**Federal Trade Commission** §310.3

failing to disclose truthfully, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;[660]

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643;

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); and

(viii) In the sale of any debt relief service:

(A) the amount of time necessary to achieve the represented results, and to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the time by which the debt relief service provider will make a bona fide settlement offer to each of them;

(B) to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the customer must accumulate before the debt relief service provider will make a bona fide settlement offer to each of them;

(C) to the extent that any aspect of the debt relief service relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, that the use of the debt relief service will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest; and

(D) to the extent that the debt relief service requests or requires the customer to place funds in an account at an insured financial institution, that the customer owns the funds held in the account, the customer may withdraw from the debt relief service at any time without penalty, and, if the customer withdraws, the customer must receive all funds in the account, other than funds earned by the debt relief service in compliance with §310.4(a)(5)(i)(A) through (C).

(2) Misrepresenting, directly or by implication, in the sale of goods or

---

the case of debt relief services, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before the consumer enrolls in an offered program.

[660] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with §310.3(a)(1)(i) of this Rule.

§ 310.3                                                    16 CFR Ch. I (1–1–14 Edition)

services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643;

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); or

(x) Any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; the amount of money or the percentage of each outstanding debt that the customer must accumulate before the provider of the debt relief service will initiate attempts with the customer's

creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the customer's debt; the effect of the service on a customer's creditworthiness; the effect of the service on collection efforts of the customer's creditors or debt collectors; the percentage or number of customers who attain the represented results; and whether a debt relief service is offered or provided by a non-profit entity.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[661] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[662] Such authorization shall be deemed verifiable if any of the following means is employed:

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[663]

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) The number of debits, charges, or payments (if more than one);

(B) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

---

[661] Truth in Lending Act, 15 U.S.C. 1601 et seq., and Regulation Z, 12 CFR part 226.

[662] Electronic Fund Transfer Act, 15 U.S.C. 1693 et seq., and Regulation E, 12 CFR part 205.

[663] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

384

**Federal Trade Commission** §310.3

(C) The amount(s) of the debit(s), charge(s), or payment(s);

(D) The customer's or donor's name;

(E) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(F) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(G) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§310.3(a)(3)(ii)(A)–(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; provided, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

385

§ 310.4  Abusive telemarketing acts or practices.

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous telemarketing transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5)(i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

(C) To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

(*1*) Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

(*2*) Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

(ii) Nothing in § 310.4(a)(5)(i) prohibits requesting or requiring the customer to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation, settlement, reduction, or other alteration of the terms of payment or other terms of a debt, provided that:

(A) The funds are held in an account at an insured financial institution;

(B) The customer owns the funds held in the account and is paid accrued interest on the account, if any;

(C) The entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service;

(D) The entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief service; and

(E) The customer may withdraw from the debt relief service at any time without penalty, and must receive all

386

Federal Trade Commission                                         § 310.4

funds in the account, other than funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C), within seven (7) business days of the customer's request.

(6) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; provided, however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(7) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(7)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) Obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) Obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number pursuant to paragraph (a)(7)(i)(A) of this section; and,

(C) Make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(7)(i) of this section, the seller or telemarketer must:

(A) At a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) Obtain from the customer or donor his or her express agreement to

be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(7)(ii)(A) of this section; or

(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with § 310.4(b)(1)(iii);

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller:

(i) Has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such

387

§310.4                                                      16 CFR Ch. I (1–1–14 Edition)

person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature[664] of that person; or

(ii) Has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(iv) Includes such person's telephone number and signature;[665] and

(B) In any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of, or previous donor to, a non-profit charitable organization on whose behalf the call is made, the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by §310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;

(2) Once invoked, immediately disconnect the call; and

(3) Be available for use at any time during the message; and

(B) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

(1) Automatically adds the number called to the seller's entity-specific Do Not Call list;

(2) Immediately thereafter disconnects the call; and

(3) Is accessible at any time throughout the duration of the telemarketing campaign; and

(iii) Complies with all other requirements of this part and other applicable federal and state laws.

(C) Any call that complies with all applicable requirements of this paragraph (v) shall not be deemed to violate §310.4(b)(1)(iv) of this part.

---

[664] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

[665] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

**Federal Trade Commission** §310.4

(D) This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with §310.4(b)(1)(iii)(A), or maintained by the Commission pursuant to §310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating §310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with §310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to §310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with §310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the ''do-not-call'' registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to §310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating §310.4(b)(1)(ii) or (iii) is the result of error.

(4) A seller or telemarketer will not be liable for violating §310.4(b)(1)(iv) if:

(i) The seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than 30 days, or separately over each successive 30-day period or portion thereof that the campaign continues.

(ii) The seller or telemarketer, for each telephone call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) Whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[666]; and

(iv) The seller or telemarketer, in accordance with §310.5(b)-(d), retains records establishing compliance with §310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or

---

[666] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; provided, however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

[75 FR 48516, Aug. 10, 2010, as amended at 76 FR 58716, Sept. 22, 2011]

### § 310.5  Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[667]

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; provided, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by § 310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by § 310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§ 310.5(a)(1)–(3) and (5); the telemarketer shall be responsible for complying with § 310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

---

[667] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with § 310.5(a)(3) of this Rule.

**Federal Trade Commission** §310.7

§310.6 **Exemptions.**

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by §310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR part 308, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," ("Franchise Rule") 16 CFR part 436, and the sale of business opportunities subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities," ("Business Opportunity Rule") 16 CFR part 437, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided*, however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided*, however, that this exemption does not apply to calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or advertisements involving goods or services described in §§310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in §310.3(a)(1) of this Rule, for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in §310.3(d) of this Rule for any requested charitable contribution; *provided*, however, that this exemption does not apply to calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or goods or services described in §§310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided*, however, that §310.4(b)(1)(iii)(B) and §310.5 of this Rule shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

§310.7 **Actions by states and private persons.**

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC 20580, and

shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

§ 310.8  Fee for access to the National Do Not Call Registry.

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by § 310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under § 310.4(b)(1)(iii)(B); provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by § 310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $59 for each area code of data accessed, up to a maximum of $16,228; provided, however, that there shall be no charge to any person for accessing the first five area codes of data, and provided further, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing area codes of data in the National Do Not Call Registry if the person is permitted to access, but is not required to access, the National Do Not Call Registry under this Rule, 47 CFR 64.1200, or any other Federal regulation or law. Any person accessing the National Do Not Call Registry may not participate in any arrangement to share the cost of accessing the registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) Each person who pays, either directly or through another person, the annual fee set forth in § 310.8(c), each person excepted under § 310.8(c) from paying the annual fee, and each person excepted from paying an annual fee under § 310.4(b)(1)(iii)(B), will be provided a unique account number that will allow that person to access the registry data for the selected area codes at any time for the twelve month period beginning on the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, each person required to pay the fee under § 310.8(c) must first pay $59 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, each person required to pay the fee under § 310.8(c) must first pay $30 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone

**Federal Trade Commission** §311.4

calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[75 FR 48516, Aug. 10, 2010; 75 FR 51934, Aug. 24, 2010, as amended at 77 FR 51697, Aug. 27, 2012; 78 FR 53643, Aug. 30, 2013]

§310.9  Severability.

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

## PART 311—TEST PROCEDURES AND LABELING STANDARDS FOR RE-CYCLED OIL

Sec.
311.1  Definitions.
311.2  Stayed or invalid parts.
311.3  Preemption.
311.4  Testing.
311.5  Labeling.
311.6  Prohibited acts.

AUTHORITY: 42 U.S.C. 6363(d).

SOURCE: 60 FR 55421, Oct. 31, 1995, unless otherwise noted.

§311.1  Definitions.

As used in this part:
(a) *Manufacturer* means any person who re-refines or otherwise processes used oil to remove physical or chem-

ical impurities acquired through use or who blends such re-refined or otherwise processed used oil with new oil or additives.

(b) *New oil* means any synthetic oil or oil that has been refined from crude oil and which has not been used and may or may not contain additives. Such term does not include used oil or recycled oil.

(c) *Processed used* oil means re-refined or otherwise processed used oil or blend of oil, consisting of such re-refined or otherwise processed used oil and new oil or additives.

(d) *Recycled oil* means processed used oil that the manufacturer has determined, pursuant to section 311.4 of this part, is substantially equivalent to new oil for use as engine oil.

(e) *Used oil* means any synthetic oil or oil that has been refined from crude oil, which has been used and, as a result of such use, has been contaminated by physical or chemical impurities.

(f) *Re-refined oil* means used oil from which physical and chemical contaminants acquired through use have been removed.

§311.2  Stayed or invalid parts.

If any part of this rule is stayed or held invalid, the rest of it will remain in force.

§311.3  Preemption.

No law, regulation, or order of any State or political subdivision thereof may apply, or remain applicable, to any container of recycled oil, if such law, regulation, or order requires any container of recycled oil, which container bears a label in accordance with the terms of §311.5 of this part, to bear any label with respect to the comparative characteristics of such recycled oil with new oil that is not identical to that permitted by §311.5 of this part.

§311.4  Testing.

To determine the substantial equivalency of processed used oil with new oil for use as engine oil, manufacturers or their designees must use the test procedures that were reported to the Commission by the National Institutes of Standards and Technology ("NIST") on

393

**APPENDIX 1 TO STIPULATED ORDER**
**FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*BankCard USA Merchant Services Accounts*

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| BankCard USA Merchant Services | 458 Media LLC | P N OXIDE | *2902 |
| BankCard USA Merchant Services | 458 Media LLC | P NITRIC | *2894 |
| BankCard USA Merchant Services | BARREL ROLL FILMS LLC | DVD ENTERTAINMENT | *5112 |
| BankCard USA Merchant Services | BARREL ROLL FILMS LLC | LIFE VITAMINS | *5120 |
| BankCard USA Merchant Services | BRILLIANT SKIN LLC | SKNCARE 8004710112 | *8439 |
| BankCard USA Merchant Services | BSC MARKETING INC | PURE GCB 800 413 9366 | *6581 |
| BankCard USA Merchant Services | BSC MARKETING INC | PURE GC 800 424 9142 | *6599 |
| BankCard USA Merchant Services | BSC MARKETING INC | PURE RK 800 396 5158 | *6573 |
| BankCard USA Merchant Services | BSC MARKETING LLC | MAX VITAMINS 800-499-9515 | *4982 |
| BankCard USA Merchant Services | CAS VENTURES LLC | EXERCISE DVDS | *2616 |
| BankCard USA Merchant Services | CSA VENTURES LLC | EXERCISE DVDS | *4990 |
| BankCard USA Merchant Services | DIET CONCEPTS LLC | SKINNY8005938029 | *4483 |
| BankCard USA Merchant Services | GCB MARKETING LLC | GCBDIET 8889122761 | *8496 |
| BankCard USA Merchant Services | GCB MARKETING LLC | GARCINIA 8889241351 | *8694 |
| BankCard USA Merchant Services | GCB MARKETING LLC | GAR 8888518616 | *8892 |
| BankCard USA Merchant Services | GCB MARKETING LLC | MENST 8889192045 | *9015 |
| BankCard USA Merchant Services | HEALTH FORMULAS LLC | SP VITAMINS 8004249142 | *5096 |
| BankCard USA Merchant Services | HEALTH PRODUCTS DIRECT LLC | GREEN 8889122765 | *8488 |

**APPENDIX 1**

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| BankCard USA Merchant Services | HEALTH PRODUCTS DIRECT LLC | SUPANT8889241372 | *9106 |
| BankCard USA Merchant Services | HEALTH PRODUCTS DIRECT LLC | T10 8889192044 | *9098 |
| BankCard USA Merchant Services | HEALTH PRODUCTS DIRECT LLC | WGTLOSS 8888518620 | *9114 |
| BankCard USA Merchant Services | KMS MARKETING LLC | SIMPLE PURE NUTRITION | *2541 |
| BankCard USA Merchant Services | KMS MARKETING LLC | DIRECT DVD | *4776 |
| BankCard USA Merchant Services | KMS MARKETING LLC | FORMULA T10 800 497 0709 | *6516 |
| BankCard USA Merchant Services | KMS MARKETING LLC | BLACK BULL 800 496 6099 | *6524 |
| BankCard USA Merchant Services | LONGHORN MARKETING LLC | LIFE VITAMINS | *4768 |
| BankCard USA Merchant Services | LUMINOUS SKIN LLC | SKNREPAIR 8004711126 | *8421 |
| BankCard USA Merchant Services | MENS HEALTH FORMULAS LLC | MENS VITAMINS | *5005 |
| BankCard USA Merchant Services | METHOD DIRECT LLC | DIRECT DVD | *5054 |
| BankCard USA Merchant Services | MORINGA MARKETING LLC | PURE 8888518617 | *5035 |
| BankCard USA Merchant Services | MORINGA MARKETING LLC | LIFE VITA 8889241352 | *9023 |
| BankCard USA Merchant Services | MORINGA MARKETING LLC | PUREGM 8889122762 | *8504 |
| BankCard USA Merchant Services | MORINGA MARKETING LLC | FT10 8889192046 | *8967 |
| BankCard USA Merchant Services | NATURAL PRODUCTS DIRECT LLC | GCBC 8889122764 | *8512 |
| BankCard USA Merchant Services | NATURAL PRODUCTS DIRECT LLC | SUPERIOR 8889241354 | *9064 |
| BankCard USA Merchant Services | NATURAL PRODUCTS | FORMULA 8889192048 | *9122 |

**APPENDIX 1**

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| | DIRECT LLC | | |
| BankCard USA Merchant Services | NATURAL PRODUCTS DIRECT LLC | GRN 8888518619 | *9148 |
| BankCard USA Merchant Services | NORTHBOUND MARKETING LLC | GCB 8889122759 | *8470 |
| BankCard USA Merchant Services | NORTHBOUND MARKETING LLC | MHF 8889192043 | *8660 |
| BankCard USA Merchant Services | NORTHBOUND MARKETING LLC | SUPER 8889241349 | *8744 |
| BankCard USA Merchant Services | NORTHBOUND MARKETING LLC | GC 8888288229 | *8900 |
| BankCard USA Merchant Services | NORTHERN HEALTH PRODUCTS LLC | VELVET 8889241373 | *9155 |
| BankCard USA Merchant Services | NORTHERN HEALTH PRODUCTS LLC | MUSCLE 8889192050 | *8520 |
| BankCard USA Merchant Services | PURE AND NATURAL HEALTH PROD | PURE GCB 800-409-8125 | *6490 |
| BankCard USA Merchant Services | PURE AND NATURAL HEALTH PROD | PURE VITA 800-397-7127 | *6508 |
| BankCard USA Merchant Services | PURE AND NATURAL HEALTH PROD | GRNC8888255058 | *6771 |
| BankCard USA Merchant Services | PURE AND NATURAL HEALTH PROD | PUREFOCUS8003888771 | *7340 |
| BankCard USA Merchant Services | PURE AND NATURAL HEALTH PROD | PURE GC 800-422-3010 | *6474 |
| BankCard USA Merchant Services | PURE AND SIMPLE HEALTH PRODU | PUREGRN 800 396 9790 | *6607 |
| BankCard USA Merchant Services | PURE AND SIMPLE HEALTH PRODU | PURE GCB 800 440 0699 | *6615 |
| BankCard USA Merchant Services | PURE AND SIMPLE HEALTH PRODU | PURE GC 800 433 8173 | *6623 |

**APPENDIX 1**

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| BankCard USA Merchant Services | PURE AND SIMPLE HEALTH PRODU | PUREGC8888264902 | *6763 |
| BankCard USA Merchant Services | PURE AND SIMPLE HEALTH PRODU | SKINNY8005938032 | *7431 |
| BankCard USA Merchant Services | PURE VITAMINS LLC | PURE VITAMINS | *2533 |
| BankCard USA Merchant Services | PURE VITAMINS LLC | PURE GCB800 397 5811 | *6656 |
| BankCard USA Merchant Services | PURE VITAMINS LLC | PURE GCB 800 421 7221 | *6664 |
| BankCard USA Merchant Services | PURE VITAMINS LLC | PURE GC 800 426 1944 | *6672 |
| BankCard USA Merchant Services | RADIANT SKIN LLC | BRIGHT 8004711277 | *8116 |
| BankCard USA Merchant Services | RADIANT SKIN LLC | SKINRX 8004811766 | *8124 |
| BankCard USA Merchant Services | SHIMMERING SKIN LLC | BSKIN 8004756117 | *8140 |
| BankCard USA Merchant Services | SHIMMERING SKIN LLC | RSKIN 8004818099 | *8132 |
| BankCard USA Merchant Services | SKINNY 7 LLC | HEALTH 8889122763 | *8454 |
| BankCard USA Merchant Services | SKINNY 7 LLC | ANTLER 8889241353 | *8975 |
| BankCard USA Merchant Services | SKINNY 7 LLC | WELLNSS 8888518618 | *8819 |
| BankCard USA Merchant Services | SKINNY 7 LLC | FORMT10 8889192047 | *8702 |
| BankCard USA Merchant Services | TINDY FILMS LLC | DISCOUNT DVD | *5062 |
| BankCard USA Merchant Services | TINDY FILMS LLC | BLACK BULL 800 490 1828 | *6649 |
| BankCard USA Merchant Services | TINDY FILMS LLC | FORMULA T10 800 499 9515 | *6631 |
| BankCard USA Merchant Services | WEIGHTLOSS DOJO LLC | FITNESS DVD | *5070 |
| BankCard USA Merchant Services | WEIGHTLOSS DOJO LLC | WL DVD 800-390-9406 | *5088 |
| BankCard USA Merchant Services | WELLNESS PRODUCTS LLC | PEAK 800 409 7870 | *6466 |

**APPENDIX 1**

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| BankCard USA Merchant Services | WELLNESS PRODUCTS LLC | PEAK NITRIC OXIDE 800 398 0056 | *6482 |
| BankCard USA Merchant Services | YACON MARKETING LLC | GCAM 8888299002 | *8447 |
| BankCard USA Merchant Services | YACON MARKETING LLC | T10 8889192049 | *8678 |
| BankCard USA Merchant Services | YACON MARKETING LLC | GRN 8889122760 | *8827 |
| BankCard USA Merchant Services | YACON MARKETING LLC | GRN8888268667 | *9072 |

**APPENDIX 1**

APPENDIX 2 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT

*CashFlows Accounts*

| Financial Institution or Merchant Processor | Account Name | Business ID | Card Acceptor ID |
|---|---|---|---|
| CashFlows | Aegean Marketing DID6 LTD | **8612 | **2138 |
| CashFlows | Alonzo Product Marketing BC1 LTD | **8302 | **1687 |
| CashFlows | Alphabet City Marketing DID9 LTD | **8634 | **2161 |
| CashFlows | Amari Marketing DEK5 LTD | **8329 | **1721 |
| CashFlows | Amsterdam Direct SLM11 LTD | **8629 | **2156 |
| CashFlows | Angeleno Marketing SLM22 | **8711 | **2254 |
| CashFlows | Athens Marketing SLM7 LTD | **8610 | **2136 |
| CashFlows | Autzen Marketing DEK16 Ltd | **8700 | **2243 |
| CashFlows | Barrington Products Direct SLM1 LTD | **8360 | **1756 |
| CashFlows | Beach Products SLM16 | **8709 | **2252 |
| CashFlows | Bimini Marketing BC15 Ltd | **8678 | **2219 |
| CashFlows | Bowery Marketing BC13 LTD | **8641 | **2169 |
| CashFlows | Bridge Road Marketing SLM21 | **8712 | **2255 |
| CashFlows | Broadway Marketing DEK11 LTD | **8620 | **2147 |
| CashFlows | Brooklyn Direct DID10 LTD | **8635 | **2162 |
| CashFlows | Canal Products DID8 LTD | **8638 | **2165 |
| CashFlows | Centerline Marketing BC16 Ltd | **8677 | **2218 |
| CashFlows | Central Park Products SLM9 LTD | **8627 | **2154 |
| CashFlows | Classic Product Marketing DEK19 | **8697 | **2240 |
| CashFlows | Coastal Marketing BC17 Ltd | **8696 | **2239 |
| CashFlows | Commonwealth Marketing DID13 | **8719 | **2262 |
| CashFlows | Compass Marketing BC18 Ltd | **8676 | **2217 |
| CashFlows | Coral Tree Marketing DEK22 Ltd | **8695 | **2238 |
| CashFlows | CSC Direct BC6 LTD | **8606 | **2132 |
| CashFlows | Direct Health SLM2 LTD | **8361 | **1757 |
| CashFlows | Direct Products BC5 LTD | **8308 | **1693 |
| CashFlows | Dover Health DID1 LTD | **8309 | **1694 |
| CashFlows | Downtown Direct SLM10 LTD | **8628 | **2155 |
| CashFlows | Downwind Marketing BC19 Ltd | **8686 | **2229 |
| CashFlows | Eastwind Marketing BC14 Ltd | **8706 | **2249 |

| Financial Institution or Merchant Processor | Account Name | Business ID | Card Acceptor ID |
|---|---|---|---|
| CashFlows | Eureka Product Marketing SLM20 | **8714 | **2257 |
| CashFlows | Fairway Marketing BC20 LTD | **8693 | **2236 |
| CashFlows | Gaviota Direct BC8 LTD | **8608 | **2134 |
| CashFlows | GN Health DID2 LTD | **8310 | **1695 |
| CashFlows | Golden State Products DEK21 Ltd | **8702 | **2245 |
| CashFlows | Greenhill Health SLM5 LTD | **8364 | **1760 |
| CashFlows | Greenwich Products BC9 LTD | **8623 | **2150 |
| CashFlows | Health Products BC4 LTD | **8307 | **1692 |
| CashFlows | Highline Marketing DID11 LTD | **8636 | **2163 |
| CashFlows | Hollis Marketing DID16 Ltd | **8707 | **2250 |
| CashFlows | Holly Health DID3 LTD | **8312 | **1697 |
| CashFlows | Hollywood Health Products DID22 | **8717 | **2260 |
| CashFlows | Hudson Marketing BC10 LTD | **8626 | **2153 |
| CashFlows | Ivan Products Direct DID5 LTD | **8319 | **1706 |
| CashFlows | Jackson Health DEK4 LTD | **8327 | **1716 |
| CashFlows | Jackson Marketing SLM17 Ltd | **8704 | **2247 |
| CashFlows | KOS Marketing DEK2 LTD | **8322 | **1711 |
| CashFlows | La Maida Marketing DEK18 Ltd | **8685 | **2228 |
| CashFlows | Lagoon Marketing DID7 LTD | **8613 | **2139 |
| CashFlows | Landmark Marketing BC21 Ltd | **8692 | **2235 |
| CashFlows | Lexington Direct DID12 LTD | **8637 | **2164 |
| CashFlows | Lief Marketing SLM3 LTD | **8362 | **1758 |
| CashFlows | LV Health Products DEK1 LTD | **8321 | **1708 |
| CashFlows | Madison Marketing DEK8 LTD | **8648 | **2182 |
| CashFlows | Masthead Marketing BC22 Ltd | **8691 | **2234 |
| CashFlows | Merrimack Marketing DID14 Ltd | **8713 | **2256 |
| CashFlows | Milban Direct SLM4 LTD | **8363 | **1759 |
| CashFlows | Mix Marketingn DID4 LTD | **8313 | **1699 |
| CashFlows | Moya Marketing SLM6 LTD | **8609 | **2135 |
| CashFlows | Mustang Marketing DID17 Ltd | **8708 | **2251 |
| CashFlows | Mythos Direct DEK7 LTD | **8615 | **2141 |
| CashFlows | Nolita Products Direct BC11 LTD | **8649 | **2183 |
| CashFlows | North Shore Marketing DID15 Ltd | **8718 | **2261 |
| CashFlows | Northeast Marketing DID21 LTD | **8716 | **2259 |
| CashFlows | Nutra Direct BC3 LTD | **8306 | **1691 |
| CashFlows | Oakland Marketing SLM19 | **8715 | **2258 |

**APPENDIX 2**

| Financial Institution or Merchant Processor | Account Name | Business ID | Card Acceptor ID |
|---|---|---|---|
| CashFlows | Oregon Product Marketing DEK17 Ltd | **8701 | **2244 |
| CashFlows | Pac12 Marketing DEK14 | **8688 | **2231 |
| CashFlows | Pacer Products SLM14 Ltd | **8703 | **2246 |
| CashFlows | Pacific Product Marketing SLM15 Ltd | **8705 | **2248 |
| CashFlows | Park Products Direct DEK10 LTD | **8619 | **2146 |
| CashFlows | Paros Direct SLM8 LTD | **8611 | **2137 |
| CashFlows | Pure Health BC2 LTD | **8303 | **1688 |
| CashFlows | PURE WELLNESS PRODUCTS LTD | **8189 | **1496 |
| CashFlows | Purple Mountain Marketing DEK15 Ltd | **8699 | **2242 |
| CashFlows | Radar Marketing BC23 Ltd | **8690 | **2233 |
| CashFlows | Shaw Direct DEK3 LTD | **8324 | **1713 |
| CashFlows | Soho Marketing SLM13 LTD | **8631 | **2158 |
| CashFlows | Southland Products SLM23 | **8710 | **2253 |
| CashFlows | Spring Street Marketing BC12 LTD | **8625 | **2152 |
| CashFlows | Sprinter Direct DEK9 LTD | **8618 | **2145 |
| CashFlows | Tribeca Marketing SLM12 LTD | **8630 | **2157 |
| CashFlows | Tundra Direct DEK6 LTD | **8614 | **2140 |
| CashFlows | Van Dyke Marketing DEK20 | **8689 | **2232 |
| CashFlows | Ventura Direct BC7 LTD | **8607 | **2133 |
| CashFlows | West Coast Marketing DEK13 Ltd | **8698 | **2241 |
| CashFlows | Westside Direct DEK12 LTD | **8621 | **2148 |

**APPENDIX 2**

**APPENDIX 3 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*Chain Commerce Inc. ("Chain") Accounts*

| Financial Institution or Merchant Processor | Account Name | Account Number |
|---|---|---|
| Chain | BSC Marketing/MFI Limited - FITDVD | *0977 |
| Chain | BSC Marketing/MFI Limited – DIRECTDVD | *0978 |
| Chain | BSC Marketing/MFI Limited – PNUTRI | *0976 |

**APPENDIX 3**

**APPENDIX 4 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*Charles Schwab & Co., Inc. Accounts*

| Financial Institution | Account Name | Account Number |
|---|---|---|
| Charles Schwab & Co., Inc. | Method Films Inc 401K Profit Sharing, Jason Miller & Danele Miller, Pension Trustees | XXXX-8001 (Schwab One Pension Trust Master Account) |
| Charles Schwab & Co., Inc. | Method Films Inc 401K Profit Sharing, Jason Miller & Danele Miller, Pension Trustees | XXXX-7826 (Schwab One Pension Trust Master Account) |
| Charles Schwab & Co., Inc. | Method Films, Inc. - Defined Beneficiary Plan, Jason Miller & Danelle Miller, Pension Trustees | XXXX-6954 (Schwab One Pension Trust Master Account) |

**APPENDIX 4**

**APPENDIX 5 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*Comerica Bank and/or Comerica Bank & Trust National Association ("Comerica")
Individual Accounts*

| Financial Institution | Account Name | Account Number |
|---|---|---|
| Comerica | DANELLE MILLER OR JASON MILLER | *2914 |
| Comerica | DANELLE MILLER OR JASON MILLER | *6350 |
| Comerica | DANELLE MILLER OR JASON MILLER | *7242 |
| Comerica | DANELLE MILLER OR JASON MILLER | *1325 |

**APPENDIX 5**

**APPENDIX 6 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*Comerica Bank and/or Comerica Bank & Trust National Association ("Comerica")
Corporate Accounts*

| Financial Institution | Account Name | Account Number |
|---|---|---|
| Comerica | 458 MEDIA LLC | *2571 |
| Comerica | 458 MEDIA LLC | *3652 |
| Comerica | ALPHA BRANDS LLC | *0988 |
| Comerica | ALPHA BRANDS LLC | *0996 |
| Comerica | BARREL ROLL FILMS LLC  ( % CHAPNICK SMUKLER & CHAPNICK ) | *3892 |
| Comerica | BRILLIANT SKIN LLC | *9585 |
| Comerica | BRILLIANT SKIN LLC | *1045 |
| Comerica | BRILLIANT SKIN LLC | *1052 |
| Comerica | BRILLIANT SKIN LLC | *0822 |
| Comerica | BSC MARKETING LLC (% CHAPNICK SMUKLER CHAPNICK) | *8875 |
| Comerica | BSC MARKETING LLC (% CHAPNICK SMUKLER CHAPNICK) | *8883 |
| Comerica | BSC MARKETING LLC (% CHAPNICK SMUKLER CHAPNICK) | *8891 |
| Comerica | BSC MARKETING LLC (% CHAPNICK SMUKLER CHAPNICK) | *8909 |
| Comerica | CHERRY HILL MARKETING LLC | *2811 |
| Comerica | CHERRY HILL MARKETING LLC | *2852 |
| Comerica | CHERRY HILL MARKETING LLC | *2829 |
| Comerica | CHERRY HILL MARKETING LLC | *2837 |
| Comerica | CHERRY HILL MARKETING LLC | *2845 |
| Comerica | CSA VENTURES LLC | *8917 |
| Comerica | CSA VENTURES LLC | *8925 |
| Comerica | CSA VENTURES LLC | *8933 |
| Comerica | CSA VENTURES LLC | *8941 |
| Comerica | CSA VENTURES LLC  C/O CHAPNICK SMUKLER & CHAPNICK | *3728 |
| Comerica | DIET CONCEPTS LLC | *8977 |
| Comerica | DIET CONCEPTS LLC | *9017 |
| Comerica | DIET CONCEPTS LLC | *9058 |
| Comerica | DIET CONCEPTS LLC | *1748 |
| Comerica | DIET CONCEPTS LLC | *1755 |

**APPENDIX 6**

| Financial Institution | Account Name | Account Number |
|---|---|---|
| Comerica | DISCOUNT PROVISIONS LLC (%CSC) | *7797 |
| Comerica | DISCOUNT PROVISIONS LLC (%CSC) | *7805 |
| Comerica | DISCOUNT PROVISIONS LLC (%CSC) | *4841 |
| Comerica | DISCOUNT PROVISIONS LLC (C/O CHAPNICK SMUKLER & CHAPNICK INC) | *3660 |
| Comerica | DISCOUNT PROVISIONS LLC (C/O CHAPNICK SMUKLER & CHAPNICK INC) | *7950 |
| Comerica | DJD DISTRIBUTION LLC ( % CHAPNICK SMUKLER & CHAPNICK ) | *2708 |
| Comerica | EXTAMAX DIRECT MARKETING LLC | *9068 |
| Comerica | EXTAMAX DIRECT MARKETING LLC | *4593 |
| Comerica | EXTAMAX DIRECT MARKETING LLC | *9092 |
| Comerica | EXTAMAX DIRECT MARKETING LLC DBA VITAMAN LABS (% CHAPNICK SMUKLER & CHAPNICK) | *2858 |
| Comerica | EXTREME GIRLS VIDEO LLC | *6596 |
| Comerica | F12 MEDIA LLC | *2563 |
| Comerica | F12 MEDIA LLC | *2240 |
| Comerica | FLEX FORMULAS LLC POCKET (C/O CSC) | *1127 |
| Comerica | FLEX FORMULAS LLC MANAGEMENT (C/O CSC) | *1135 |
| Comerica | GCB MARKETING LLC | *9239 |
| Comerica | GCB MARKETING LLC | *1177 |
| Comerica | GCB MARKETING LLC | *1185 |
| Comerica | GCB MARKETING LLC | *9221 |
| Comerica | HEALTH FORMULAS LLC MANAGEMENT ACCOUNT (% CHAPNICK SMUKLER & CHAPNICK) | *4523 |
| Comerica | HEALTH FORMULAS LLC  MERCHANT ACCOUNT 1  ( % CHAPNICK SMUKLER & CHAPNICK) | *4531 |
| Comerica | HEALTH FORMULAS LLC  MERCHANT ACCOUNT 3 (% CHAPNICK SMUKLER & CHAPNICK) | *4556 |
| Comerica | HEALTH FORMULAS LLC  RESERVE (% CHAPNICK SMUKLER & CHAPNICK) | *4817 |

**APPENDIX 6**

| Financial Institution | Account Name | Account Number |
|---|---|---|
| Comerica | HEALTH FORMULAS LLC  DBA SIMPLE PURE NUTRITION MANAGEMENT ACCOUNT (% CHAPNICK SMUKLER & CHAPNICK) | *0905 |
| Comerica | HEALTH FORMULAS LLC MERCHANT ACCOUNT 2 ( % CHAPNICK SMUKLER & CHAPNICK) | *4549 |
| Comerica | HEALTH PRODUCTS DIRECT LLC | *9270 |
| Comerica | HEALTH PRODUCTS DIRECT LLC | *9288 |
| Comerica | HEALTH PRODUCTS DIRECT LLC | *9296 |
| Comerica | HEALTH PRODUCTS DIRECT LLC | *1151 |
| Comerica | KMS MARKETING LLC (% CHAPNICK SMUKLER CHAPNICK) | *8834 |
| Comerica | KMS MARKETING LLC (% CHAPNICK SMUKLER CHAPNICK) | *8842 |
| Comerica | KMS MARKETING LLC (% CHAPNICK SMUKLER CHAPNICK) | *8859 |
| Comerica | KMS MARKETING LLC (% CHAPNICK SMUKLER CHAPNICK) | *8867 |
| Comerica | LONGHORN MARKETING LLC | *3678 |
| Comerica | LONGHORN MARKETING LLC ( % CSC) | *7410 |
| Comerica | LONGHORN MARKETING LLC ( % CSC) | *7436 |
| Comerica | LONGHORN MARKETING LLC ( % CSC) | *7428 |
| Comerica | LONGHORN MARKETING LLC RESERVE (C/O CHAPNICK SMUKLER & CHAPNICK INC) | *3454 |
| Comerica | LUMINOUS SKIN LLC | *9577 |
| Comerica | LUMINOUS SKIN LLC | *1037 |
| Comerica | LUMINOUS SKIN LLC | *1060 |
| Comerica | LUMINOUS SKIN LLC | *1259 |
| Comerica | MDCC LLC MANAGEMENT ACCOUNT (%CSC) | *7901 |
| Comerica | MDCC LLC POCKET ACCOUNT (%CSC) | *8743 |
| Comerica | MENS HEALTH FORMULAS LLC  (% CHAPNICK SMUKLER & CHAPNICK) | *2874 |
| Comerica | MENS HEALTH FORMULAS LLC  (% CHAPNICK SMUKLER & CHAPNICK) | *4858 |
| Comerica | MENS HEALTH FORMULAS LLC RESERVE (% CHAPNICK SMUKLER & CHAPNICK) | *3447 |
| Comerica | MENS HEALTH FORMULAS LLC #2 (% CHAPNICK SMUKLER & CHAPNICK) | *0939 |

**APPENDIX 6**

| Financial Institution | Account Name | Account Number |
|---|---|---|
| Comerica | MENS HEALTH FORMULAS LLC #3 (% CHAPNICK SMUKLER & CHAPNICK) | *0947 |
| Comerica | MENS HEALTH FORMULAS LLC (% CHAPNICK SMUKLER & CHAPNICK) | *3686 |
| Comerica | MENS HEALTH FORMULAS LLC MANAGEMENT ACCOUNT (% CHAPNICK SMUKLER & CHAPNICK) | *0913 |
| Comerica | METHOD DIRECT LLC | *4726 |
| Comerica | METHOD DIRECT LLC | *8743 |
| Comerica | METHOD DIRECT LLC DBA PLAYBOY OFFER DVD ENTERTAINMENT | *3162 |
| Comerica | METHOD DIRECT LLC DBA PLAYBOY OFFER DVD ENTERTAINMENT | *3196 |
| Comerica | METHOD DIRECT LLC DBA PLAYBOY OFFER DVD ENTERTAINMENT | *3204 |
| Comerica | METHOD DIRECT LLC DBA PLAYBOY OFFER DVD ENTERTAINMENT | *5594 |
| Comerica | METHOD DIRECT LLC DBA PLAYBOY OFFER DVD ENTERTAINMENT | *5602 |
| Comerica | METHOD DIRECT LLC DBA PLAYBOY OFFER DVD ENTERTAINMENT | *3397 |
| Comerica | METHOD FILMS INC DBA PLAYBOY OFFER DVD ENTERTAINMENT (% CHAPNICK SMUKLER & CHAPNICK) | *5895 |
| Comerica | METHOD FILMS INC DBA PLAYBOY OFFER DVD ENTERTAINMENT (% CHAPNICK SMUKLER & CHAPNICK) | *2185 |
| Comerica | METHOD FILMS INC DBA PLAYBOY OFFER DVD ENTERTAINMENT MONEY MARKET(% CHAPNICK SMUKLER & CHAPNICK) | *4809 |
| Comerica | METHOD FILMS INC MONEY MARKET (% CHAPNICK SMUKLER & CHAPNICK) | *8826 |
| Comerica | METHOD FILMS INC TAX ACCOUNT (% CHAPNICK SMUKLER & CHAPNICK) | *8768 |
| Comerica | MORINGA MARKETING LLC | *9171 |
| Comerica | MORINGA MARKETING LLC | *1193 |
| Comerica | MORINGA MARKETING LLC | *1201 |
| Comerica | MORINGA MARKETING LLC | *9163 |
| Comerica | NATURAL PRODUCTS DIRECT LLC | *9254 |

**APPENDIX 6**

| Financial Institution | Account Name | Account Number |
|---|---|---|
| Comerica | NATURAL PRODUCTS DIRECT LLC | *9262 |
| Comerica | NATURAL PRODUCTS DIRECT LLC | *1169 |
| Comerica | NATURAL PRODUCTS DIRECT LLC | *9247 |
| Comerica | NORTHBOUND MARKETING LLC | *9213 |
| Comerica | NORTHBOUND MARKETING LLC | *1136 |
| Comerica | NORTHBOUND MARKETING LLC | *1144 |
| Comerica | NORTHBOUND MARKETING LLC | *9205 |
| Comerica | NORTHERN HEALTH PRODUCTS LLC | *9197 |
| Comerica | NORTHERN HEALTH PRODUCTS LLC | *9338 |
| Comerica | NORTHERN HEALTH PRODUCTS LLC | *9346 |
| Comerica | NORTHERN HEALTH PRODUCTS LLC | *9189 |
| Comerica | PURE AND NATURAL HEALTH PRODUCTS LLC (% CHAPNICK SMUKLER & CHAPNICK ) | *5122 |
| Comerica | PURE AND NATURAL HEALTH PRODUCTS LLC (% CHAPNICK SMUKLER & CHAPNICK ) | *5130 |
| Comerica | PURE AND NATURAL HEALTH PRODUCTS LLC (% CHAPNICK SMUKLER & CHAPNICK ) | *5148 |
| Comerica | PURE AND NATURAL HEALTH PRODUCTS LLC (% CHAPNICK SMUKLER & CHAPNICK ) | *2464 |
| Comerica | PURE AND SIMPLE HEALTH PRODUCTS LLC (% CHAPNICK SMUKLER & CHAPNICK ) | *5114 |
| Comerica | PURE AND SIMPLE HEALTH PRODUCTS LLC (% CHAPNICK SMUKLER & CHAPNICK ) | *5155 |
| Comerica | PURE AND SIMPLE HEALTH PRODUCTS LLC (% CHAPNICK SMUKLER & CHAPNICK ) | *5163 |
| Comerica | PURE AND SIMPLE HEALTH PRODUCTS LLC (% CHAPNICK SMUKLER & CHAPNICK ) | *2472 |
| Comerica | PURE VITAMINS LLC (%CSC) | *1865 |
| Comerica | PURE VITAMINS LLC (%CSC) | *1873 |
| Comerica | PURE VITAMINS LLC (%CSC) | *1881 |
| Comerica | RADIANT SKIN LLC | *9544 |
| Comerica | RADIANT SKIN LLC | *9551 |
| Comerica | RADIANT SKIN LLC | *9569 |

**APPENDIX 6**

| Financial Institution | Account Name | Account Number |
|---|---|---|
| Comerica | SHIMMERING SKIN LLC | *9601 |
| Comerica | SHIMMERING SKIN LLC | *9619 |
| Comerica | SHIMMERING SKIN LLC | *9627 |
| Comerica | SKINNY 7 LLC | *8936 |
| Comerica | SKINNY 7 LLC | *9320 |
| Comerica | SKINNY 7 LLC | *1110 |
| Comerica | SKINNY 7 LLC | *1128 |
| Comerica | THE BEN FRANKLIN LLC | *8693 |
| Comerica | TINDY FILMS LLC | *6024 |
| Comerica | TINDY FILMS LLC | *8350 |
| Comerica | VIP SAVINGS LLC | *4618 |
| Comerica | VIP SAVINGS LLC | *3702 |
| Comerica | VIP SAVINGS LLC | *8024 |
| Comerica | VIP SAVINGS LLC | *7295 |
| Comerica | VIP SAVINGS LLC | *3694 |
| Comerica | VIP SAVINGS LLC  MAIN ACCOUNT | *7287 |
| Comerica | WEIGHT LOSS DOJO LLC  ACCOUNT #3 (% CHAPNICK SMUKLER & CHAPNICK) | *3462 |
| Comerica | WEIGHT LOSS DOJO LLC (% CHAPNICK SMUKLER & CHAPNICK) | *3371 |
| Comerica | WEIGHT LOSS DOJO LLC DBA FITNESS DVDS RESERVE ACCOUNT  (% CHAPNICK SMUKLER & CHAPNICK) | *4734 |
| Comerica | WELLNESS LABS LLC | *6088 |
| Comerica | WELLNESS LABS LLC | *6047 |
| Comerica | WELLNESS LABS LLC  (% CHAPNICK SMUKLER & CHAPNICK ) | *6005 |
| Comerica | WELLNESS LABS LLC  (% CHAPNICK SMUKLER & CHAPNICK ) | *4866 |
| Comerica | WELLNESS LABS LLC RESERVE ACCOUNT (% CHAPNICK SMUKLER & CHAPNICK ) | *6655 |
| Comerica | WELLNESS PRODUCTS LLC | *5296 |
| Comerica | WELLNESS PRODUCTS LLC | *5338 |
| Comerica | WELLNESS PRODUCTS LLC | *5965 |
| Comerica | WELLNESS PRODUCTS LLC | *3710 |
| Comerica | WELLNESS PRODUCTS LLC | *4601 |
| Comerica | WELLNESS PRODUCTS LLC | *4874 |
| Comerica | YACON MARKETING LLC | *9312 |
| Comerica | YACON MARKETING LLC | *1219 |

**APPENDIX 6**

| Financial Institution | Account Name | Account Number |
|---|---|---|
| Comerica | YACON MARKETING LLC | *1227 |
| Comerica | YACON MARKETING LLC | *9304 |

**APPENDIX 6**

**APPENDIX 7 TO STIPULATED ORDER**
**FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*Cynergy Data LLC Accounts*

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| Cynergy Data LLC | BARREL ROLLS | DISCOUNT DVD | *9993 |
| Cynergy Data LLC | BARREL ROLL FILMS LLC | BARREL DVDENTERTAINMENT | *8856 |
| Cynergy Data LLC | BARREL ROLL FILMS LLC | BARREL ROLL DVDENTERTAINMENT | *9359 |
| Cynergy Data LLC | BARREL ROLL FILMS LLC | DISCOUNT DVDENTERTAINMENT | *9375 |
| Cynergy Data LLC | BSC MARKETING LLC | SIMPLE PURE NUTRITION | *5501 |
| Cynergy Data LLC | CSA VENTURES LLC | EXERCISE DVDS | *4171 |
| Cynergy Data LLC | KMS MARKETING LLC | SIMPLE PURE HCG | *3206 |
| Cynergy Data LLC | MENS HEALTH FORMULAS | MENS VITAMINS 800-497-0709 | *1417 |
| Cynergy Data LLC | METHOD DIRECT | DVD ENTERTAINING | *3555 |
| Cynergy Data LLC | METHOD DIRECT LLC | DVD ENTERTAINMENT | *0148 |
| Cynergy Data LLC | METHOD DIRECT LLC | DVD ENTERTAINMENT | *2226 |
| Cynergy Data LLC | METHOD DIRECT LLC | VITAMAN LAB | *0189 |
| Cynergy Data LLC | METHOD DIRECT LLC | VITAMAN LABS | *2119 |
| Cynergy Data LLC | METHOD DIRECT LLC | VLABS 800-490-1828 | *4309 |
| Cynergy Data LLC | PURE AND SIMPLE HEALTH PRODUCTS | BSKIN8885967929 | *3229 |
| Cynergy Data LLC | PURE AND SIMPLE PRODUCTS LLC | BSS*BRIGHTSKINSERUM | *9411 |
| Cynergy Data LLC | PURE VITAMINS LLC | MTL*GCBMAXTRIAL | *2287 |
| Cynergy Data | PURE VITAMINS | G4M*GCPLUS4ME | *2311 |

**APPENDIX 7**

| LLC | LLC | | |
|-----|-----|-----|-----|
| Cynergy Data LLC | SHIMMERING SKIN LLC | SHIMMERING SKIN | *7204 |
| Cynergy Data LLC | TINDY FILMS LLC | DISCOUNT DVD | *3013 |
| Cynergy Data LLC | TINDY FILMS LLC | DISCOUNT DVD | *0496 |
| Cynergy Data LLC | WEIGHT LOSS DOJO LLC | FITNESS DVDS | *9761 |
| Cynergy Data LLC | WELLNESS PRODUCTS LLC | PEAKNO8886518657 | *3203 |
| Cynergy Data LLC | WELLNESS PRODUCTS LLC | P4M*PEAK4ME | *9338 |

**APPENDIX 7**

**APPENDIX 8 TO STIPULATED ORDER**
**FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*Electronic Merchant Systems, Inc. Accounts*

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| Electronic Merchant Systems, Inc. | MENS HEALTH FORMULAS, LLC | BBULL8885007505 | *7747 |
| Electronic Merchant Systems, Inc. | MENS HEALTH FORMULAS, LLC | TBOOST8884064394 | *7754 |
| Electronic Merchant Systems, Inc. | PURE AND NATURAL HEALTH PRODUCTS, LLC | MYSKIN8883199533 | *8553 |
| Electronic Merchant Systems, Inc. | PURE AND NATURAL HEALTH PRODUCTS, LLC | SKINRX8882962328 | *8561 |
| Electronic Merchant Systems, Inc. | PURE & SIMPLE HEALTH PRODUCTS, LLC | SKINCARE888-295-4667 | *1302 |
| Electronic Merchant Systems, Inc. | PURE & SIMPLE HEALTH PRODUCTS, LLC | BSKIN 888-294-5420 | *1310 |
| Electronic Merchant Systems, Inc. | PURE VITAMINS, LLC | BUYPURE 800-458-1775 | *1294 |
| Electronic Merchant Systems, Inc. | VIP SAVINGS, LLC | VIP SAVINGS CENTER | *2908 |

**APPENDIX 9 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*EVO Payments International LLC ("EVO") Accounts*

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| EVO | BRILLIANT SKIN LLC | SKINRX8004771126 | *4593 |
| EVO | BRILLIANT SKIN LLC | Brilliant Skin LLC | *7779 |
| EVO | BSC MARKETING LL | 877-283-3402 MAX VITMN | *4798 |
| EVO | BSC MARKETING LLC | T10 8005280063 | *4927 |
| EVO | BSC MARKETING LLC | EMAXVITA8009790142 | *9559 |
| EVO | BSC MARKETING LLC | ExerciseDVD8666556073 | *4780 |
| EVO | BSC MARKETING LLC | VELVET8005933798 | *4570 |
| EVO | CHERRY HILL MARKETING, LLC | GCMax8882806778 | *8238 |
| EVO | CHERRY HILL MARKETING, LLC | GRN8886272373 | *8246 |
| EVO | CHERRY HILL MARKETING, LLC | SKNCARE8882955212 | *9552 |
| EVO | CHERRY HILL MARKETING, LLC | BrghtSKN8882961322 | *0980 |
| EVO | CHERRY HILL MARKETING, LLC | Cherry Hill Marketing | *2655 |
| EVO | CSA VENTURES LLC | CSA Ventures | *1905 |
| EVO | CSA VENTURES LLC | REPAIRRx8884064391 | *9818 |
| EVO | CSA VENTURES LLC | SKINREPAIR8884064392 | *9826 |
| EVO | CSA VENTURES LLC | EXERDVD866-641-1488 | *9625 |
| EVO | DIET CONCEPTS | DIET8882115511 | *1111 |
| EVO | DIET CONCEPTS | GRNCOF8883199684 | *8162 |
| EVO | DIET CONCEPTS | GarC8882682865 | *8188 |
| EVO | DIET CONCEPTS | Cambogia8882682865 | *8778 |
| EVO | DIET CONCEPTS | GRNCOF8883199684 | *8794 |

**APPENDIX 9**

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| EVO | DIET CONCEPTS | DIET8882114873 | *9640 |
| EVO | DISCOUNT PROVISIONS | BrtSKIN8883568999 | *0659 |
| EVO | DISCOUNT PROVISIONS | SkinSerum8884054070 | *0600 |
| EVO | DISCOUNT PROVISIONS | GROCERY8775915914 | *4444 |
| EVO | DISCOUNT PROVISIONS LLC | Super Grocery Savers | *5191 |
| EVO | HEALTH FORMULAS LLC | 877-591-5868 PURE VIT | *4500 |
| EVO | HEALTH FORMULAS LLC | VITAFIT8666304386 | *8718 |
| EVO | HEALTH FORMULAS LLC | GC8882691233 | *8760 |
| EVO | HEALTH FORMULAS LLC | RVITAFIT8666304386 | *8577 |
| EVO | HEALTH FORMULAS LLC | TVITAFIT8666304386 | *8783 |
| EVO | HEALTH FORMULAS LLC | GREEN8883473556 | *9016 |
| EVO | HEALTH FORMULAS LLC | WVITAFIT8666304386 | *8643 |
| EVO | HEALTH PRODUCTS DIRECT LLC | TSTRN8889241347 | *5428 |
| EVO | HEALTH PRODUCTS DIRECT LLC | Garcinia8882663259 | *5436 |
| EVO | HEALTH PRODUCTS DIRECT LLC | Ant Vel 8889241377 | *5451 |
| EVO | HEALTH PRODUCTS DIRECT LLC | GreenCof8882678545 | *5469 |
| EVO | HEALTH PRODUCTS DIRECT LLC | TSTRN 888-924-1347 | *4358 |
| EVO | HEALTH PRODUCTS DIRECT LLC | GARCINIA8882663259 | *4499 |
| EVO | KMS MARKETING LLC | KMS MARKETING | *2416 |
| EVO | KMS MARKETING LLC | 866-630-4392 FIT DVD.. | *8833 |

**APPENDIX 9**

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| EVO | KMS MARKETING LLC | Tboost8883486824 | *8679 |
| EVO | LONGHORN MARKETING | Longhorn Marketing | *2150 |
| EVO | LONGHORN MARKETING | SAV8884064568 | *9495 |
| EVO | LONGHORN MARKETING LLC | ANTLERV8775915916 | *4519 |
| EVO | LUMINOUS SKIN | GCam8888181861 | *8576 |
| EVO | LUMINOUS SKIN LLC | Luminous Skin LLC | *7787 |
| EVO | LUMINOUS SKIN LLC | GCPLUS8883199678 | *6341 |
| EVO | LUMINOUS SKIN LLC | RSKIN8887710678 | *6481 |
| EVO | LUMINOUS SKIN LLC | GCBMAX8888240879 | *8584 |
| EVO | LUMINOUS SKIN LLC | Luminous Skin LLC | *7720 |
| EVO | MENS HEALTH FORMULAS LLC | Velvet8884070266 | *8950 |
| EVO | MENS HEALTH FORMULAS LLC | MENS VITAMINS | *7467 |
| EVO | MENS HEALTH FORMULAS LLC | MENSVITA8666411487 | *9690 |
| EVO | METHOD DIRECT LLC | VITAFIT8009790430 | *4693 |
| EVO | METHOD DIRECT LLC | ExtaMax8009790157 | *4332 |
| EVO | NATURAL PRODUCTS DIRECT LLC | GC8886272377 | *8196 |
| EVO | NATURAL PRODUCTS DIRECT LLC | GRNLEAN8886272318 | *8204 |
| EVO | NORTHERN HEALTH PRODUCTS LLC | 8889241348TBoost | *4553 |
| EVO | NORTHERN HEALTH PRODUCTS LLC | 8882473398GRNCLN | *4561 |
| EVO | NORTHERN HEALTH PRODUCTS LLC | 8889241376Velvet | *4579 |
| EVO | NORTHERN HEALTH PRODUCTS LLC | 8882374123MYGC | *4645 |
| EVO | PURE AND NATURAL HEALTH PRODUCT | SKINRX8882962328 | *6855 |

**APPENDIX 9**

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| EVO | PURE AND NATURAL HEALTH PRODUCT | MYSKIN8883199533 | *6707 |
| EVO | PURE AND NATURAL HEALTH PRODUCTS | GCLEAN8886272379 | *8212 |
| EVO | PURE AND NATURAL HEALTH PRODUCTS | GRN8886272320 | *8220 |
| EVO | PURE AND SIMPLE HEALTH PRODUCTS | BSKN8882945420 | *6954 |
| EVO | PURE AND SIMPLE HEALTH PRODUCTS | SKINCARE8882954667 | *6830 |
| EVO | PURE VITAMINS LLC | BuyPure8004581775 | *5387 |
| EVO | PURE VITAMINS LLC | WPUREVIT8666304396 | *8858 |
| EVO | PURE VITAMINS LLC | RPUREVIT8666304396 | *9062 |
| EVO | PURE VITAMINS LLC | TPUREVIT8666304396 | *8924 |
| EVO | PURE VITAMINS LLC | PUREVITA8666304396 | *8999 |
| EVO | PURE VITAMINS LLC | PureGrn8004670776 | *5395 |
| EVO | PURE VITAMINS, LLC | 8666304396PureVita | *2418 |
| EVO | RADIANT SKIN LLC | Rskin8004818099 | *2300 |
| EVO | RADIANT SKIN LLC | SKINRPR8004811766 | *2326 |
| EVO | RADIANT SKIN LLC | RSKIN8004818099 | *0217 |
| EVO | RADIANT SKIN LLC | SKINRPR8004811766 | *0282 |
| EVO | SHIMMERING SKIN LLC | Sknsrm8004756117 | *2428 |
| EVO | SHIMMERING SKIN LLC | Bright8004711277 | *2477 |
| EVO | SHIMMERING SKIN LLC | Skincare8885961949 | *7834 |
| EVO | SHIMMERING SKIN LLC | SKINSERUM8885961952 | *7842 |
| EVO | SHIMMERING SKIN LLC | BRIGHT8004711277 | *1252 |
| EVO | SHIMMERING SKIN LLC | sknsrm8004756117 | *1435 |
| EVO | SKINNY 7 LLC | GC8883481746 | *7885 |
| EVO | SKINNY 7 LLC | Skinny 7 LLC | *7688 |
| EVO | SKINNY 7 LLC | GCSLIM8888177165 | *8550 |
| EVO | SKINNY 7 LLC | MyGCB8888207341 | *8568 |
| EVO | SKINNY7 LLC | Skinny 7 LLC | *7696 |
| EVO | VIP SAVINGS CENTER | VIPSAVE8666304391 | *4378 |

**APPENDIX 9**

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| EVO | VIP SAVINGS LLC | GCB8883466629 | *9156 |
| EVO | VIP SAVINGS LLC | Garcinia8882699189 | *9172 |
| EVO | VIP SAVINGS LLC | Vip Savings LLC | *3351 |
| EVO | WEIGHT LOSS DOJO LLC | WeightDojo8003909409 | *4290 |
| EVO | WELLNESS LABS LLC | wellnss8883199542 | *0212 |
| EVO | WELLNESS PRODUCTS LLC | 800431851 PKNITRICOXDE | *0450 |
| EVO | WELLNESS PRODUCTS LLC | GETNITRO8886158898 | *7909 |
| EVO | WELLNESS PRODUCTS LLC | nitro8886080191 | *7891 |

**APPENDIX 9**

**APPENDIX 10 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*Humboldt Merchant Services Accounts*

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| Humboldt Merchant Services | BSC MARKETING | SUPERIOR VELVET | *6887 |
| Humboldt Merchant Services | BSC MARKETING | T10 | *7885 |
| Humboldt Merchant Services | DIET CONCEPTS | Diet Concepts | *4882 |
| Humboldt Merchant Services | HEALTH PRODUCTS DIRECT | Tboostmax.com | *6881 |
| Humboldt Merchant Services | HEALTH PRODUCTS DIRECT | AuthenticGCB.com | *7889 |
| Humboldt Merchant Services | HEALTH PRODUCTS DIRECT | AuthenticGC.com | *8887 |
| Humboldt Merchant Services | HEALTH PRODUCTS DIRECT | MAXANTLERVELVET.COM | *5883 |
| Humboldt Merchant Services | NOTHERN HEALTH PRODUCTS | Antlervelvetplus.com | *0882 |
| Humboldt Merchant Services | NOTHERN HEALTH PRODUCTS | VELVET 8889241376 | *1880 |
| Humboldt Merchant Services | NOTHERN HEALTH PRODUCTS | Grn Cln8882473398 | *0884 |
| Humboldt Merchant Services | NOTHERN HEALTH PRODUCTS | T BOOST 8889241348 | *1882 |
| Humboldt Merchant Services | NOTHERN HEALTH PRODUCTS | MY GC 18882374123 | *2880 |
| Humboldt Merchant Services | PURE AND NATURAL HEALTH | GETREMARKABLESKIN.COM | *0882 |
| Humboldt Merchant Services | PURE AND NATURAL HEALTH | MYREMARKABLESKIN.COM | *1880 |
| Humboldt Merchant Services | PURE AND SIMPLE HEALTH PRODUCTS LLC | BRAVOBRIGHTSKIN.COM | *3881 |
| Humboldt Merchant Services | PURE VITAMINS LLC | BUY PURE GC | *9881 |
| Humboldt Merchant Services | PURE VITAMINS LLC | PURE GREEN | *8883 |
| Humboldt | RADIANT SKIN LLC | Tryrxrepair.com | *8882 |

| Merchant Services | | | |
|---|---|---|---|
| Humboldt Merchant Services | SHIMMERING SKIN LLC | Trybrightskin.com | *9881 |

**APPENDIX 10**

**APPENDIX 11 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*Meritus Payment Solutions, now known as Paysafe Group, a subsidiary of
Optimal Payments ("Meritus") Accounts*

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| Meritus | Cherry Hill Marketing LLC | Pure Green Coffee Bean Plus | *1267 |
| Meritus | Cherry Hill Marketing LLC | Garcinia Cambogia Lean | *1275 |
| Meritus | CSA Ventures LLC | VitaMan Labs | *9535 |
| Meritus | CSA Ventures LLC | FITNESS DVDS | *9537 |
| Meritus | Diet Concepts LLC | Skinny 6 | *1150 |
| Meritus | Diet Concepts LLC | Authentic Green Coffee Bean | *1168 |
| Meritus | Extamax Direct Marketing LLC | EXTAMAX DIRECT MARKETING LLC | *0860 |
| Meritus | Health Formulas, LLC | Simple Pure Nutrition | *8319 |
| Meritus | Health Formulas | Pure Vitamins | *7299 |
| Meritus | KMS Marketing LLC | DIRECT DVD | *9538 |
| Meritus | KMS Marketing LLC | Simple Pure Nutrition | *7759 |
| Meritus | Longhorn Marketing LLC | Life Vitamins | *7779 |
| Meritus | Men's Health Formulas LLC | Men's Health | *7799 |
| Meritus | Method Direct LLC | VitaMan Labs | *6519 |
| Meritus | Method Direct LLC | DVD Entertainment | *6899 |
| Meritus | Method Direct LLC | DVD Entertainment-2 SK | *6258 |
| Meritus | Method Direct LLC | DVD Entertainment SK | *7059 |
| Meritus | Method Direct LLC | VitaMan Labs SK | *7119 |
| Meritus | Method Films Limited | Pure Vitamins | *7277 |
| Meritus | Method Films Limited | Life Vitamins | *7539 |
| Meritus | Method Films Limited | Men's Health Formulas | *7573 |
| Meritus | Method Films Limited | Simple Pure Nutrition | *7591 |
| Meritus | Natural Products Direct LLC | Green Coffee Lean | *1176 |
| Meritus | Natural Products Direct LLC | Garcinia Cambogia Max | *1184 |
| Meritus | Shimmering Skin LLC | Garcinia Plus | *1192 |

**APPENDIX 11**

| Meritus | Shimmering Skin LLC | Green Coffee Bean | *1200 |
| Meritus | Tindy Films, LLC | Weightloss Dojo | *1142 |
| Meritus | VIP Savings LLC | VIP Savings Center | *9536 |
| Meritus | Weight Loss Dogo, LLC | FITNESS DVDS | *1079 |
| Meritus | Wellness Products LLC | Peak Nitric Oxide | *3183 |

**APPENDIX 11**

**APPENDIX 12 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*Orion Payment Systems Accounts*

| Financial Institution or Merchant Processor | Account Name | DBA | Account Number |
|---|---|---|---|
| Orion Payment Systems | Diet Concepts, LLC | SKINNY8888284662 | *0043 |
| Orion Payment Systems | Diet Concepts, LLC | GreenCoffee8886080209 | *0044 |
| Orion Payment Systems | Pure and Simple Health Products, LLC | Bskin8887083242 | *0046 |
| Orion Payment Systems | Shimmering Skin, LLC | GREENCOF8886080210 | *0047 |
| Orion Payment Systems | Shimmering Skin, LLC | Bright8885961948 | *0048 |
| Orion Payment Systems | Wellness Products LLC | PEAK8888247530 | *0045 |

**APPENDIX 12**

**APPENDIX 13 TO STIPULATED ORDER
FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT**

*UBS Financial Services, Inc. Accounts*

| Financial Institution | Account Name | Account Number |
|---|---|---|
| UBS Financial Services Inc. | Danelle Miller College Fund 529 FBO [REDACTED] | JP-XXX00 (529 Account) |
| UBS Financial Services Inc. | Danelle Miller College Fund 529 FBO [REDACTED] | JP-XXX02 (529 Account) |
| UBS Financial Services Inc. | Danelle Miller College Fund 529 FBO [REDACTED] | JP-XXX01 (529 Account) |
| UBS Financial Services Inc. | Danelle Miller, Jason Miller JTWROS | 34760 (Resource Managed Account) |
| UBS Financial Services Inc. | Danelle Marie Miller SEP-IRA | JP-56767 (Retirement Account) |
| UBS Financial Services Inc. | Danelle Miller SEP-IRA | JP-34759 (Retirement Acct) |
| UBS Financial Services Inc. | Jason Miller SEP- IRA | JP-34757 (Retirement Account) |
| UBS Financial Services Inc. | Jason Miller SEP- IRA | JP-39956 (Retirement Account) |

**APPENDIX 13**